UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LORI REYNOLDS, Individually and as Administratrix of the
ESTATE OF ANGELA P. PENG,

*Plaintiff,*

-against-

THE COUNTY OF ONONDAGA, ONONDAGA COUNTY
JUSTICE CENTER, ONONDAGA COUNTY SHERIFF'S
OFFICE, EUGENE J. CONWAY, as the Onondaga County
Sheriff, ESTEBAN M. GONZALEZ, as the Chief Custody
Deputy, NAPHCARE, INC., and "JOHN/JANE DOE" #1 through
"JOHN/JANE DOE" #30 (the last thirty names being fictitious,
intended to designate the Onondaga County Justice Center
deputies, staff, and employees and the agents, assigns, servants and/or
employees of the County of Onondaga, Onondaga County Sheriff's
Office, and Onondaga County Justice Center as well as the
agents, assigns, servants, and/or employees of NAPHCARE, INC.
responsible by virtue of employment or contract for providing care,
control, and supervision to the Plaintiff-decedent, Angela P. Peng, during
the course of her incarceration at the Onondaga County Justice Center,
each individually and in their official capacity),

*Defendants,*

**COMPLAINT AND
JURY DEMAND**

Civil Action No.:
 5:22-cv-1165 (BKS/TWD)

---

Plaintiff, **LORI REYNOLDS,** Individually and as Administratrix of the Estate of

**ANGELA P. PENG**, by her attorneys, **KENNY & KENNY, PLLC**, as and for her Complaint,

alleges:

## SUMMARY OF ACTION

1.      This is a wrongful death and 42 U.S.C. § 1983 action brought by the Decedent's

mother, Lori Reynolds, for the serious injury and death of her daughter, Angela P. Peng,

(hereinafter "Angela" or "decedent"), while she was an inmate at the Onondaga County Justice

Center.

2.      This is also an action for Defendants' deliberate indifference to Angela P. Peng's serious medical and mental health needs, violating said decedent's Constitutional rights.

3.      Upon Angela's admission to the Onondaga County Justice Center and during her incarceration, Defendants failed to address Decedent's suicidal ideations and behaviors, as well as her physical condition, particularly given Angela's known history of suicide attempts and her physical condition, as she was undergoing acute stress from detoxing.

4.      Among other warning signs that Angela was suicidal and had serious medical issues that required treatment, on September 2, 2021, the day before she was found to have hung herself in her cell, she was found lethargic and non-verbal laying on her jail cell floor covered in vomit and feces. Medical staff at the Justice Center noted that she had been having these symptoms for approximately five (5) hours prior to EMS arrival. A history of chronic Fentanyl and Meth use was also noted. EMS arrived at the Justice Center at approximately 11:25 P.M. on September 2, 2021 and Angela was transported to Upstate University Hospital via EMS where she was evaluated and released back to the Justice Center at approximately 8:00 A.M. on September 3, 2021.

5.      Due to the failures, inattention and deliberate indifference of Defendants, Angela was found unresponsive in her cell at the Onondaga County Justice Center on or about September 3, 2021, having hung herself with a bed sheet, and later passed away from her injuries on September 6, 2021 at Upstate University Hospital in Syracuse, New York.

## PARTIES

6.      Plaintiff, **LORI REYNOLDS**, the mother of the Decedent, Angela P. Peng, resides at 40 West Williams Street, Apt. 212, Corning, New York 14830, and acts as the protective Administratrix and representative of the Estate of Angela P. Peng, deceased.

7.      Plaintiff's decedent, Angela P. Peng, was born in 1994 and resided in Onondaga County, State of New York, at all times pertinent herein.

8.      At all relevant times prior to her untimely death, Angela was an adult.

9.      Upon her death, Angela left her parents, Lori Reynolds and Wei-Min Peng, surviving her as next of kin.

10.     Plaintiff, **LORI REYNOLDS**, is duly authorized to commence this proceeding, both as the Administratrix of the Estate of Angela P. Peng, deceased, and as the representative of the next of kin of the decedent for purposes of this lawsuit, having been so appointed and issued Letters of Administration by the Surrogate's Court, Onondaga County, on or about December 8, 2021. Said Letters of. Administration have been annexed hereto as **Exhibit "A."**

11.     These Letters of Administration have not been revoked, rescinded or otherwise terminated, and are in full force and effect at this time. These Letters specifically provide Plaintiff with the authority and standing to bring the instant action on Angela's behalf.

12.     Upon information and belief, at all times hereinafter mentioned, Defendant, **THE COUNTY OF ONONDAGA** (also referred to as "**ONONDAGA COUNTY**" herein) was and is a municipal corporation organized and existing under the laws of the State of New York with principal offices located at 421 Montgomery Street, Syracuse, New York 13202.

13.     Upon information and belief, and at all times hereinafter mentioned, Defendant **ONONDAGA COUNTY JUSTICE CENTER** was and is an inmate holding facility operated, managed, controlled, and/or maintained by Defendant **COUNTY OF ONONDAGA** and Defendant **ONONDAGA COUNTY SHERIFF'S OFFICE.**

14.     Upon information and belief, and at all times hereinafter mentioned, Defendant **ONONDAGA COUNTY SHERIFF'S OFFICE** was and is a department of the Defendant

**COUNTY OF ONONDAGA** with offices located at 407 South State Street, Syracuse, New York 13202.

15.    Upon information and belief, and at all times hereinafter mentioned, Defendant **NAPHCARE, INC.** was and is a foreign business corporation incorporated in the State of Alabama with a principal place of business located at 2090 Columbiana Rd, Suite 4000, Birmingham, Alabama 35216 and doing business within the State of New York as a contracted correctional healthcare services provider with Defendants **COUNTY OF ONONDAGA**, **ONONDAGA COUNTY SHERIFF'S OFFICE** and/or **ONONDAGA COUNTY JUSTICE CENTER** and, therefore was acting as an agent, servant, and/or employee of the **COUNTY OF ONONDAGA, ONONDAGA COUNTY SHERIFF'S OFFICE** and/or **ONONDAGA JUSTICE CENTER.**

16.    Upon information and belief, and at all times hereinafter mentioned, Defendant **EUGENE J. CONWAY**, as Onondaga County Sheriff, was and is an agent and/or employee of Defendant, **COUNTY OF ONONDAGA** and Defendant **ONONDAGA COUNTY SHERIFF'S OFFICE** and was charged, in whole or in part, with the management, supervision, and maintenance of the Defendant **ONONDAGA COUNTY JUSTICE CENTER** and the employees and contractors therein, such as Defendant **NAPHCARE, INC.** therein and was also assigned and/or tasked with the supervision of inmates incarcerated at the premises.

17.    Upon information and belief, and at all times hereinafter mentioned, Defendant **ESTEBAN M. GONZALEZ,** as Chief Custody Deputy, was and is an agent and/or employee of Defendant, **COUNTY OF ONONDAGA** and Defendant **ONONDAGA COUNTY SHERIFF'S OFFICE** and was charged, in whole or in part, with the management, supervision, and maintenance of the Defendant **ONONDAGA COUNTY JUSTICE CENTER** and the

employees and contractors therein, such as Defendant **NAPHCARE, INC.** therein and was also assigned and/or tasked with the supervision of inmates incarcerated at the premises.

18.    Upon information and belief, and at all times hereinafter mentioned, the Defendant deputy(ies), officer(s), and/or guard(s) responsible for the care, custody, control, management, and supervision of the decedent, Angela P. Peng, , identified herein as "**JOHN/JANE DOE #1 THROUGH JOHN/JANE DOE #30,**" were employed by the Defendants, **COUNTY OF ONONDAGA**, **ONONDAGA COUNTY SHERIFF'S OFFICE**, **ONONDAGA COUNTY JUSTICE CENTER, EUGENE J. CONWAY**, as Onondaga County Sheriff and/or **ESTEBAN M. GONZALEZ,** as Chief Custody Deputy and were acting in his/her/their official capacity and under color of law at all times pertinent herein.  As such, said Defendants are vicariously liable for the acts of said **"JOHN/JANE DOE(S)"** under the doctrine of *respondeat superior.* Said Defendants are sued individually and in their official capacity.

19.    Upon information and belief, and at all times hereinafter mentioned, the Defendant medical personnel employed and/or otherwise retained by Defendant, **NAPHCARE, INC.,** were responsible for overseeing and managing the medical care of inmates, such as the decedent, Angela P. Peng, at the Onondaga County Justice Center, were employed and/or contracted to do so by the Defendants, **COUNTY OF ONONDAGA**, **ONONDAGA COUNTY SHERIFF'S OFFICE**, **ONONDAGA COUNTY JUSTICE CENTER**, **EUGENE J. CONWAY**, as Onondaga County Sheriff and/or **ESTEBAN M. GONZALEZ,** as Chief Custody Deputy, and were acting in his/her/their course of employment at all times pertinent herein.  As such, Defendants are vicariously liable for the acts of said **"JOHN/JANE DOE(S)"** under the doctrine of *respondeat superior.* Said Defendants are sued individually and in their official capacity as employees and/or contractors of Defendant, **NAPHCARE, INC**.

20.     On or about March 8, 2022, Plaintiff, **LORI REYNOLDS, as Administratrix of the Estate of ANGELA P. PENG**, caused a due and proper Notice of Claim to be served upon the municipal Defendants, **COUNTY OF ONONDAGA**, **ONONDAGA COUNTY SHERIFF'S OFFICE**, and **ONONDAGA COUNTY JUSTICE CENTER**, as required by New York General Municipal Law § 50-e(1)(a) (within ninety (90) days of the appointment of Plaintiff as Administratrix to Angela's Estate). No adjustment or payment has been made thereon within thirty (30) days. This action was commenced within one (1) year and ninety (90) days after the cause of action accrued.  Said Notice of Claim has been annexed hereto as **Exhibit "B."**

21.     Defendants failed to notice a New York General Municipal Law § 50-h examination of Plaintiff and should be found to have waived said opportunity.

## JURISDICTION AND VENUE

22.     This action is brought pursuant to 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments of the United States Constitution.

23.     This Court has jurisdiction over the claims alleged in the Compliant pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343, as well as supplemental jurisdiction over all state common law claims pursuant to 28 U.S.C. § 1367.

24.     The County of Onondaga, wherein all parties resided at the time of the occurrence and wherein a substantial part of the events or omissions giving rise to the claim occurred, is within the jurisdiction of the United States District Court, Northern District of New York. Accordingly, venue is proper under 28 U.S.C. § 1391(b)(2).

25.     Upon information and belief, the above action falls within one or more exceptions noted in CPLR § 1602, including, but not limited to, reckless disregard for the safety of others.

## FACTS

26.     In September 2021, Angela P. Peng was a twenty-seven (27) year old restaurant worker and recovering heroin and alcohol addict with a history of suicide attempts.

27.     On or about September 1, 2021, Angela was remanded to the Onondaga County Justice Center on a violation of probation charge.

28.     Officers, deputies, employees and/or agents of Defendants, identified and sued herein as "JOHN/JANE DOE" #1 through "JOHN/JANE DOE" #30, subsequently transported, booked, screened, interviewed, and incarcerated Angela P. Peng at the premises.

29.     At all times relevant herein, Angela was in the exclusive custody and care of Defendants and/or Defendants' agents, servants, assigns, and/or employees.

30.     Based upon her status as a probationer, Angela's history was well-known to Defendants, having had her supervision transferred to Onondaga County from Tompkins County in 2020 after a conviction of Driving While Intoxicated (hereinafter noted as "DWI"), carrying a sentence of three (3) years of probation starting on July 21, 2020 and set to end on July 21, 2023.

31.     Among the special conditions of her probation order was that requirement that Angela attend, actively participate in, and successfully complete counseling, treatment, educational and employment programming and/or a self-help group as designated by her probation officer.

32.     Angela's pre-sentence investigation report, completed on or about March 1, 2020 in connection with her DWI conviction, contained an extensive history and recitation of Ms. Peng's legal history, history of substance abuse, and history of suicide attempts.

33.     Despite this known history, upon information and belief, Angela was never given an adequate suicide screening/evaluation, psychological/mental screening/evaluation, or medical

screening/evaluation on or about September 1, 2021 when she was remanded to the Onondaga County Justice Center for a violation of probation.

34.     Further, upon information and belief, following Angela's admission on September 1, 2021, Defendants also failed to provide Decedent with appropriate mental health counseling and other mental health treatment that was reasonable and necessary under the circumstances.

35.     Defendants further failed to provide Angela with appropriate evaluation and medical and/or mental health and/or detox treatment for an individual who was detoxing from Fentanyl and/or Meth.

36.     Among other warning signs that Angela was suicidal, on September 2, 2021, ***the day before*** she was found to have hung herself in her cell, she was found lethargic and non-verbal laying on her jail cell floor covered in vomit and feces. Medical staff at the Justice Center noted that she had been having these symptoms for approximately five (5) hours prior to EMS arrival. A history of chronic Fentanyl and Meth use was also noted. EMS arrived at the Justice Center at approximately 11:25 P.M. on September 2, 2021 and Angela was transported to Upstate University Hospital via EMS.  She was evaluated and released back to the Justice Center at approximately 8:00 A.M. on September 3, 2021.

37.     After Angela was transported to Upstate University Hospital on September 2, 2021 (arriving at said hospital just after midnight on September 3, 2021) a search was conducted of her jail cell and a white pill identified as Buprenorphine Hydrochloride, a medication used to treat opioid dependance/addiction, was located in her cell along with a broken latex balloon. Instead of being provided treatment appropriate for an individual that was detoxing, Angela was written up for a violation of the inmate handbook for having said contraband and, upon her

return to Defendants' facility on the morning of September 3, 2021, she was placed in administrative segregation.

38.    Further, upon information and belief, Defendants failed to organize, furnish, and/or otherwise "set up" Decedent's cell so as to ensure an inmate's inability to access any devices which she may use to commit suicide.

39.    Defendants and their agents knew or should have known that Angela was at risk of killing herself.

40.    Despite these circumstances, Defendants failed to place Angela on constant watch and monitor her with reasonable care.

41.    On or about the afternoon/evening of September 3, 2021, while Defendants were not engaged in reasonable monitoring of Decedent under the circumstances, Decedent hanged herself in her cell using a bed sheet in an apparent self-strangulation incident.

42.    Upon information and belief, during a routine "tour" of POD 3C, (where Angela was housed), approximately twelve (12) minutes prior to Angela being found with a bed sheet tied around her neck, officers employed by Defendants observed Angela on her hands and knees throwing up in the toilet in her cell. It was also noted that the vomiting noises could be heard at the deputy's desk in the area in which her cell was located. Nonetheless, medical staff were not notified until approximately ten (10) minutes later and responded to the unit within two (2) minutes.

43.    Upon information and belief, by the time medical staff found Angela she was unconscious and lying on the floor with her head near the rear of the toilet and a bedsheet wrapped around her neck and the rear of the toilet.

44.     Shortly thereafter, a Code Blue was called and officers, deputies, employees and/or agents of Defendants, identified herein as "John/Jane Doe #1" through "John/Jane Doe #30," unsuccessfully attempted to revive Angela P. Peng.

45.     Shortly after EMS arrived at the scene, Angela was transferred via ambulance to Upstate University Hospital where she remained in critical condition.

46.     Angela died on September 6, 2021 at Upstate University Hospital in Syracuse, New York of an apparent suicide, leaving behind her parents as next of kin.

**AS TO THE FIRST CAUSE OF ACTION FOR WRONGFUL DEATH, SURVIVAL, AND NEGLIGENCE AGAINST DEFENDANTS THE COUNTY OF ONONDAGA, ONONDAGA COUNTY JUSTICE CENTER, ONONDAGA COUNTY SHERIFF'S OFFICE, EUGENE J. CONWAY, as the Onondaga County Sheriff, ESTEBAN M. GONZALEZ, as the Chief Custody Deputy, and "JOHN/JANE DOE" #1 through "JOHN/JANE DOE" #30**

47.     Plaintiff incorporates herein by reference the allegations as set forth in the preceding paragraphs 1 to 46.

48.     At all times pertinent, as an inmate of the Onondaga County Justice Center, Angela remained in the exclusive care and custody of Defendants.

49.     All Defendants had a duty to fully assess, screen, monitor, and evaluate the safety and health of Angela under the circumstances.

50.     All Defendants further had a duty to provide Angela with reasonable and responsive medical care, including mental health care, under the circumstances to maintain the safety, health, and well-being of inmates, such as Angela.

51.     At all times relevant to this action, all Defendants had a duty to provide reasonable care to prevent foreseeable harm, including suicides, of any inmate placed in their custody.

52.     Defendants retained and were obligated to supervise the **JOHN AND/OR JANE DOE** Defendants in carrying out their duties as Onondaga County Deputy Sheriffs and/or contracted medical personnel employed by virtue of a contractual relationship between Onondaga County and Naphcare, Inc.

53.     During the period Angela was in the custody of Defendants, Defendants and their agents, servants, assigns, and/or employees also had a duty to supervise, monitor, and safeguard her well-being and whereabouts.

54.     At all times relevant to this action, said Defendants were aware and/or, in the exercise of reasonable care, should have been aware of facts, comments, and behavior that Angela P. Peng posed reasonably foreseeable and objectively serious threat and danger to herself.

55.     At all times relevant to this action, said Defendants were aware and/or, in the exercise of reasonable care, should have been aware of signs, symptoms, behavior, complaints, statements, and indications that Angela P. Peng posed a reasonably foreseeable substantial risk of serious harm to herself.

56.     At all times relevant to this action, said Defendants knew of and disregarded the substantial risk of serious harm that Angela P. Peng posed to herself and otherwise failed to take reasonable and/or proper precautions to prevent Angela P. Peng from harming herself.

57.     Said Defendants breached their duty to Angela by, among other things:

    a.     Failing to adequately supervise the Decedent under the circumstances;

    b.     Failing to adequately and properly observe Decedent in her cell;

    c.     Failing to adequately monitor Decedent's activities while she was an inmate at the Onondaga County Justice Center;

d.      Failing to adequately assess and/or monitor Decedent's mental health;

e.      Failing to provide Decedent with mental health evaluation, care, and/or treatment;

f.      Failing to adequately perform intake procedures which would, inter alia, inform Defendants and/or their agents, servants, assigns, and/or employees of an individual's medical and mental health history;

g.      Failing to intervene to provide prompt and/or adequate, including medical, mental health treatment and/or rehabilitative/detox inmates in Defendants' custody, such as Decedent herein, that was reasonable and necessary under the circumstances;

h.      Failing to have a policy, custom and practice of providing adequate attention or treatment to inmates with serious medical, mental health and/or rehabilitative needs;

i.      Failing to monitor and ensure that Decedent was safely detoxing;

j.      Failing to provide adequate rehabilitation treatment to Decedent for her to safely detox from Fentanyl and/or methamphetamine;

k.      Failing to transfer Decedent to a more appropriate incarceration facility and/or more appropriate treatment provider(s);

l.      Failing to share necessary information within the Jail/Justice Center so all relevant Jail/Justice Center employees and agents were aware of the risk of harm that Decedent posed to herself;

m.      Failing to organize, furnish, and otherwise "set up" Decedent's cell so as to ensure an inmate's inability to access any devices with which he or she may commit suicide;

n.      Failing to adequately staff the Onondaga County Justice Center so as to ensure the officers' and/or contractors' abilities to adequately supervise inmates;

o.       Failing to adequately and properly train, screen, supervise, and/or discipline employees and/or contractors of the Onondaga County Justice Center with respect to the serious medical and mental health needs of individuals in their custody and in responding to mental and physical health problems exhibited by inmates such as Decedent;

p.      Failing to train relevant Onondaga County Justice Center employees and/or contractors who oversaw Decedent's incarceration in identifying and responding to detoxification from drugs exhibited by inmates and the risks and dangers associated with said detoxification;

q.      Failing to monitor Decedent in accordance with internal policy, statewide regulations or other pertinent practices, policies, laws, rules, and/or regulations for monitoring suicidal inmates in a correctional environment;

r.      Failing to follow County and internal rules and protocols to prevent inmate suicides or suicide attempts;

s.      Failing to intervene to prevent the Decedent's attempt at suicide;

t.      Failing to promptly respond to prevent individuals who have medical, mental health and/or rehabilitative issues from attempting and/or completing suicide;

u       Failing to provide prompt and/or adequate medical care to individuals who have attempted suicide through hanging;

v.      Ignoring or otherwise being deliberately indifferent to indications from

- 13 -

Decedent that her physical and/or mental health was disturbed and that she was suicidal and/or in the process of attempting to commit suicide;

w.      Otherwise failing to act and adequately respond to an inmate such as Decedent who represented a risk of self-harm and suicide;

x.      Maintaining and developing policies that exhibit deliberate indifference to the safety of inmates, which allow inmates the ability to commit suicide while under the care, custody, control, supervision, and management of the Defendants;

y.      Failing to adequately monitor security devices so as to prevent Decedent's ability to commit suicide;

z.      Failing to have adequate security devices, such as cameras, in place to monitor inmate activity and prevent inmate suicides;

aa.      Failing to properly supervise its agents, servants, assigns, and/or employees while said individuals were on duty;

bb.      Failing to properly document complaints, reports, and/or investigations with regard to inmate safety and act on the same;

cc.      Negligently failing to report, reprimand, and otherwise discipline improper and illegal behavior;

dd..      Failing to exercise due diligence;

ee.      Failing to maintain a safe environment for inmates;

ff.      Violating 42 U.S.C. §1983 and 42 U.S.C. §1985(3);

gg.      Intentionally and/or negligently violating the civil and constitutional rights of Decedent, Angela P. Peng, secured by the Constitutions of the United States and of the State of New York, including the Eighth and Fourteenth Amendments of the United

States Constitution and Article I, Sections V and XI of the New York State Constitution and Section 28 of the New York State Civil Right Law.

58.     As a result and a proximate cause of the foregoing, Plaintiff and Plaintiff's Decedent suffered damages because of the Defendants foregoing actions and omissions, committed individually or collectively.

59.     As a result of the foregoing, Decedent, Angela P. Peng, sustained serious and permanent personal injuries, including, but not limited to, acute fentanyl intoxication in an individual with asphyxia due to hanging; related pain and suffering; loss of earnings and earnings capacity; pre-death conscious pain and suffering and mental anguish; and death.

60.     Decedent is survived by next of kin, including her mother, (Plaintiff, Lori Reynolds), and her father, Wei-Min Peng.

61.     Further, punitive damages against all Defendants are demanded and are warranted and proper under the circumstances.

62.     The Defendants are not entitled to qualified immunity under the circumstances.

63.     As a result of the foregoing, Plaintiff's decedent has been damaged in an amount which exceeds the jurisdictional limits of lower courts of the State of New York which otherwise would have jurisdiction in this action.

## AS TO THE SECOND CAUSE OF ACTION FOR WRONGFUL DEATH, SURVIVAL, AND NEGLIGENCE AGAINST DEFENDANTS NAPHCARE, INC. AND "JOHN/JANE DOE" #1 through "JOHN/JANE DOE" #30

64.     Plaintiff incorporates herein by reference the allegations as set forth in the preceding paragraphs 1 to 63.

65.     As set forth above, during the period of time that Angela was in the custody of Defendants, **THE COUNTY OF ONONDAGA, ONONDAGA COUNTY JUSTICE**

CENTER, ONONDAGA COUNTY SHERIFF'S OFFICE, EUGENE J. CONWAY, as the

Onondaga County Sheriff, ESTEBAN M. GONZALEZ, as the Chief Custody Deputy, and

"JOHN/JANE DOE" #1 through  "JOHN/JANE DOE" #30, upon information and belief,

Defendant, NAPHCARE, INC. was a non-governmental, private independent contractor paid by

Defendants COUNTY OF ONONDAGA, ONONDAGA COUNTY SHERIFF'S OFFICE

and/or ONONDAGA COUNTY JUSTICE CENTER to oversee and manage the medical and

mental health care of inmates in the Onondaga County Justice Center, including the decedent,

Angela.

66.     As set forth above, the medical personnel employed or otherwise retained by

Defendant NAPHCARE, INC. in connection with their contract to oversee and manage medical

and mental health care of inmates at the Onondaga County Justice Center also had a duty to

provide Angela with reasonable and responsive medical care, including mental health and

rehabilitative care, under the circumstances.

67.     As an entity that, upon information belief, contracted with Defendants, THE

COUNTY OF ONONDAGA, ONONDAGA COUNTY JUSTICE CENTER, ONONDAGA

COUNTY SHERIFF'S OFFICE, EUGENE J. CONWAY, as the Onondaga County

Sheriff, ESTEBAN M. GONZALEZ, as the Chief Custody Deputy, and "JOHN/JANE

DOE" #1 through  "JOHN/JANE DOE" #30, in connection with the management of medical

and mental health care of Jail/Justice Center inmates, Defendant, NAPHCARE, INC., by and

through its agents, servants, assigns, and/or employees, treated inmates such as Angela in an

environment wherein said Defendants had physical custody and control over said inmates.

68.     Defendant NAPHCARE, INC., based on the acts of its agents, servants, assigns,

and/or employees, breached its duty to the Decedent, Angela, by, among other things:

- 16 -

a.     Failing to render appropriate medical, mental health and/or rehabilitative treatment and assistance under the circumstances;

b.     Failing to monitor and ensure that Decedent was safely detoxing;

c.     Failing to provide adequate rehabilitation treatment to Decedent for her to safely detox from Fentanyl and/or methamphetamine;

d.     Failing to ensure that Decedent properly and actually received medical, mental health, and rehabilitative and/or prescription drug treatment for the physical pain and stress she was suffering from detoxing;

e.      Failing to properly and comprehensively evaluate Decedent's condition under the circumstances;

f.     Failing to transfer Decedent to a more appropriate incarceration facility and/or more appropriate treatment provider(s);

g.     Failing to share necessary information within the Jail/Justice Center or with relevant medical agents or employees so all relevant employees and/or agents were aware of the risk of harm that Decedent posed to herself;

h.     Failing to properly supervise Decedent under the circumstances;

i.     Failing to train relevant medical agents and employees who oversaw Decedent's incarceration in identifying and responding to mental and physical health problems exhibited by inmates such as Decedent;

j.     Failing to perform a proper medical and mental health screening/assessment of Decedent under the circumstances;

k.     Failing to detect Decedent's suicidal tendencies while having the

information and control necessary to do so and to care for Decedent's well-being and take such steps to prevent her suicide;

l.      Failing to properly prescribe and administer appropriate prescription drugs to Decedent under the circumstances;

m.      Failing to properly train relevant medical agents and/or employees who oversaw Decedent's treatment in identifying and responding to detoxification from drugs symptoms exhibited by inmates such as Decedent, and the risks and dangers associated with such detoxification;

n.      Failing to monitor Decedent in accordance with internal policy, county and statewide regulations or other pertinent practices, policies, laws, rules, and/or regulations for monitoring suicidal and detoxing inmates in a correctional environment;

o.      Failing to follow State, County and internal rules and protocols to prevent inmate suicide or suicide attempts;

p.      Ignoring or otherwise being deliberately indifferent to indications from Decedent that her physical and mental health was disturbed and that she was suicidal;

q.      Otherwise failing to act and adequately respond to an inmate such as Decedent who evidenced a risk of self-harm and suicide;

r.      Otherwise failing to act and adequately respond and provide emergency medical care to an inmate such as Decedent who attempted suicide by hanging;

s.      Failing to have a policy, custom and practice of providing adequate attention or treatment to inmates with serious medical, mental health and/or rehabilitative needs; and

t.      Failing to implement proper policies regarding medical, mental health and/or rehabilitative needs.

69.     Defendant, **NAPHCARE, INC.** is vicariously liable under the doctrine of *respondeat superior* for any of the foregoing acts or omissions of their medical agents, servants, and/or employees, identified herein as **JOHN/JANE DOE#1 THROUGH JOHN/JANE DOE #30**, that were dispatched and/or otherwise assigned to work at the Onondaga County Justice Center, and who committed the foregoing tortious acts or omissions against the Decedent, Angela P. Peng, under the circumstances.

70.     As a result and a proximate cause of the foregoing, Plaintiff and Plaintiff's Decedent suffered damages because of the Defendants foregoing actions and omissions, committed individually or collectively.

71.     As a result of the foregoing, Decedent, Angela P. Peng, sustained serious and permanent personal injuries, including, but not limited to, acute fentanyl intoxication in an individual with asphyxia due to hanging; related pain and suffering; loss of earnings and earnings capacity; pre-death conscious pain and suffering and mental anguish; and death.

72.     Decedent is survived by next of kin, including her mother, (Plaintiff, Lori Reynolds), and her father, Wei-Min Peng.

73.     Further, punitive damages against all Defendants are demanded and are warranted and proper under the circumstances.

74.     The Defendants are not entitled to qualified immunity under the circumstances.

75.     As a result of the foregoing, Plaintiff's decedent has been damaged in an amount which exceeds the jurisdictional limits of lower courts of the State of New York which otherwise would have jurisdiction in this action.

**AS TO THE THIRD CAUSE OF ACTION PURSUANT TO 42 U.S.C. § 1983
AGAINST THE COUNTY OF ONONDAGA, ONONDAGA COUNTY SHERIFF'S
OFFICE, EUGENE J. CONWAY, as the Onondaga County Sheriff, ESTEBAN M.
GONZALEZ, as the Chief Custody Deputy, and "JOHN/JANE DOES" #1-#30
(Failure to Provide Medical Care)**

76.     Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs numbered "1" through "75" herein.

77.     Defendants, **THE COUNTY OF ONONDAGA, ONONDAGA COUNTY JUSTICE CENTER, ONONDAGA COUNTY SHERIFF'S OFFICE, EUGENE J. CONWAY, as the Onondaga County Sheriff**, **and ESTEBAN M. GONZALEZ, as the Chief Custody Deputy**, by and through their agents, servants, assigns, and/or employees identified herein as the municipal **JOHN AND/OR JANE DOE** Defendants, (hereinafter the "municipal Defendants"), were responsible for supervising, monitoring, safeguarding and securing basic medical and mental health attention for Angela while she was in their custody and control during September 2021.

78.     Upon information and belief, at all times relevant hereto, Defendants, **THE COUNTY OF ONONDAGA, ONONDAGA COUNTY JUSTICE CENTER, ONONDAGA COUNTY SHERIFF'S OFFICE, EUGENE J. CONWAY,** as the Onondaga County Sheriff, **and ESTEBAN M. GONZALEZ,** as the Chief Custody Deputy, by and through their agents, servants, assigns, and/or employees identified herein as the municipal **JOHN AND/OR JANE DOE** Defendants, were acting under color of state law, that is under color of the Constitution, statutes, laws, rules, regulations, customs and usages of the State of New York and pursuant to their authority as law enforcement officers.

79.     At all times relevant hereto, Defendants and/or their agents, separately and in concert with each other, engaged in acts or omissions which constituted deprivation of the rights,

privileges and immunities of the Plaintiff. While these acts and omissions were carried out under color of state law, they had no justification or excuse in law, and were instead illegal, improper and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property, or ensuring civil order.

80.     Upon information and belief, at all times relevant hereto, **ESTEBAN M. GONZALEZ,** as the Chief Custody Deputy, was responsible for the day-to-day operations of the **ONONDAGA COUNTY JUSTICE CENTER**. Both **EUGENE J. CONWAY,** as the Onondaga County Sheriff, **and ESTEBAN M. GONZALEZ,** as the Chief Custody Deputy, had the custody, control and charge of the **ONONDAGA COUNTY JUSTICE CENTER** and its inmates.

81.     At all relevant times hereto, Defendants, **THE COUNTY OF ONONDAGA, ONONDAGA COUNTY JUSTICE CENTER, ONONDAGA COUNTY SHERIFF'S OFFICE, EUGENE J. CONWAY,** as the Onondaga County Sheriff, **and ESTEBAN M. GONZALEZ,** as the Chief Custody Deputy, and their agents, servants, and/or employees had a duty to provide Plaintiff with reasonable medical care.

82.     As set forth herein, Decedent, Angela P. Peng, was incarcerated in the Onondaga County Justice Center under conditions posing a reasonably foreseeable substantial risk of serious harm to herself.

83.     From September 1, 2021 through September 3, 2021, Defendants were aware of, witnessed, or otherwise identified or should have identified through the exercise of reasonable care Angela's serious medical and mental health needs that required adequate and responsive attention by Defendants and their agents, assigns, servants, and/or employees, including, but not limited to, her active state of detoxification from Fentanyl and/or Methamphetamine.

- 21 -

84.     Among other warning signs that Angela was suicidal and required appropriate rehabilitative care, on September 2, 2021, the day before she was found to have hung herself in her cell, she was found lethargic and non-verbal laying on her jail cell floor covered in vomit and feces. Medical staff at the Justice Center noted that she had been having these symptoms for approximately five (5) hours prior to EMS arrival. A history of chronic Fentanyl and Meth use was also noted. EMS arrived at the Justice Center at approximately 11:25 P.M. on September 2, 2021 and Angela was transported to Upstate University Hospital via EMS.  She was evaluated at Upstate University Hospital and was released back to the Justice Center at approximately 8:00 A.M. on September 3, 2021.

85.     After Angela was transported to Upstate University Hospital on September 2, 2021, (arriving at said hospital just after midnight on September 3, 2021), a search was conducted of her jail cell and a white pill identified as Buprenorphine Hydrochloride, a medication used to treat opioid dependance/addiction, was located in her cell along with a broken latex balloon. Instead of being provided appropriate rehabilitative care, Angela was written up for a violation of the inmate handbook for having said contraband and, upon her return to Defendants' facility in the morning of September 3, 2021, she was placed in administrative segregation.

86.     Defendants continued to fail to reasonably monitor Plaintiff's decedent, particularly given this history, and, upon information and belief, Plaintiff's decedent continued to display signs of detoxification and continued to throw up throughout the day.

87.     Most significantly, upon information and belief, during a routine "tour" of POD 3C, (where Angela was housed), approximately twelve (12) minutes prior to Angela being found with a bed sheet tied around her neck, officers employed by Defendants observed Angela on her

hands and knees throwing up in the toilet in her cell. It was also noted that the vomiting noises could be heard at the deputy's desk in the area in which her cell was located. Nonetheless, medical staff were not notified until approximately ten (10) minutes later and responded to the unit within two (2) minutes to find Angela unconscious and lying on the floor with her head near the rear of the toilet and a bedsheet wrapped around her neck and the rear of the toilet.

88.     Further, upon information and belief, Defendants failed to organize, furnish, and/or otherwise "set up" Decedent's cell so as to ensure an inmate's inability to access any devices which she may use to commit suicide.

89.     Based upon the foregoing, Defendants and their agents, servants, assigns, and/or employees, knew or should have known that Angela was at risk of self-harm and, as such, said Defendants' failure and/or refusal to properly supervise, monitor, screen, treat and evaluate Plaintiff's decedent Angela P. Peng prior to her apparent suicide attempt constituted deliberate indifference to the safety, health and well being as well as to Angela's serious and urgent medical and mental health needs. of Angela P. Peng in violation of Angela P. Peng's Eight Amendment right to reasonable and adequate medical care and Fourteenth Amendment right to due process.

90.     Defendants recklessly failed to act with reasonable care to mitigate the risk that Angela's severe medical, mental health and rehabilitative needs posed to her life, health, and safety, even though Defendants knew, or should have known, that her condition posed an excessive risk to her life, health, and safety.

91.     Defendants also exhibited deliberate indifference to Angela's serious medical, mental health and rehabilitative needs by the acts and omissions identified in paragraphs "57" and "68" above and constituted a failure to provide reasonable and adequate medical care.

92.     At all times pertinent, the municipal Defendants, identified above, acted under color of law, and pursuant to their authority as law enforcement officers, and deprived Angela of federal and state rights, including the rights, liberties, freedoms, and privileges guaranteed under the United States Constitution and federal and state statutes, including, but not limited to, Angela's right to reasonable and adequate medical care and right to due process.

93.     At all times pertinent, the municipal Defendants, identified above, and/or their agents, servants, assigns, and/or employees, separately and in concert with each other, engaged in acts and omissions which constituted deprivation of the rights, privileges and immunities of the Decedent. While these acts and omissions were carried out under the color of state law, they had no justification or excuse in law, and were instead illegal, improper and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property, or ensuring civil order.

94.     Defendants' actions undertaken pursuant to rules, policies, procedures, regulations, usages and practices violate the protections guaranteed by the Constitution of the United States, and are, therefore, unconstitutional and unlawful pursuant to 42 U.S.C. § 1983.

95.     As a result of the foregoing, Decedent, Angela P. Peng, sustained serious and permanent personal injuries, including but not limited to:  loss of Constitutional rights, both federal and state; acute fentanyl intoxication in an individual with asphyxia due to hanging; related pain and suffering; loss of earnings and earnings capacity; pre-death conscious pain and suffering and mental anguish; and death.

96.     As a result of the foregoing, Plaintiff demands judgment against the municipal Defendants in the amount of $5,000,000.00.

97.     In addition, punitive damages against the municipal Defendants in an appropriate amount, as determined by the trier of fact of this action, is demanded and is warranted and proper due to the municipal Defendants' reckless and callous indifference to Angela's rights.

98.     Additionally, Plaintiff is entitled to an award of attorneys' fees and costs as may be recoverable by law, and demands the same accordingly.

**AS TO THE FOURTH CAUSE OF ACTION PURSUANT TO 42 U.S.C. § 1983AGAINST THE COUNTY OF ONONDAGA, ONONDAGA COUNTY SHERIFF'S OFFICE, EUGENE J. CONWAY, as the Onondaga County Sheriff, ESTEBAN M. GONZALEZ, as the Chief Custody Deputy, and "JOHN/JANE DOES" #1-#30 (Cruel and Unusual Punishment)**

99.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs numbered "1" through "98" herein.

100.     Upon information and belief, Defendants, **THE COUNTY OF ONONDAGA** and **THE ONONDAGA COUNTY SHERIFF'S OFFICE**, **EUGENE J. CONWAY, as the Onondaga County Sheriff, ESTEBAN M. GONZALEZ, as the Chief Custody Deputy, and "JOHN/JANE DOES" #1-#30,** as indicated by the various acts and omissions set forth herein, have policies, customs, and practices of: (1) not providing or otherwise ensuring adequate attention or treatment that when presented with inmates with serious medical, mental health and rehabilitative needs, including suicidal ideation and drug withdrawal symptoms; and (2) not properly training their employees and agents on how to adequately respond to inmates' suicidal ideation and drug withdrawal symptoms when said symptoms are presented or known to said employees and agents; and (3) not properly staffing the Justice Center with sufficient employees or agents, particularly employees or agents appropriately trained to respond to inmates' serious medical, mental health and rehabilitative needs at the Justice Center; and (4) lacking proper

policies regarding notification to and follow-up by health professionals for serious medical, mental health and rehabilitative needs of inmates, among other deficiencies.

101.    The Deputies and/or other agents of the **ONONDAGA COUNTY JUSTICE CENTER** either knew or should have known through the exercise of reasonable care that Plaintiff's decedent was in need of medical, mental health and rehabilitative attention and was at risk of self-harm.

102.    The continued failure of Onondaga County and the Onondaga County Sheriff's Department's policies, customs and practices as identified above is also exhibited by the fact that at least one other inmate, Paul Watkins, (date of death of December 16/17, 2021) killed himself by self-injurious conduct in the Onondaga County Justice Center just a couple of months subsequent to the Decedent, Angela P. Peng, having attempted suicide by hanging at the very same Justice Center.

103.    In addition, among other warning signs that Angela was suicidal and in need of m serious medical attention, on September 2, 2021, *the day before* she was found to have hung herself in her cell, she was found lethargic and non-verbal laying on her jail cell floor covered in vomit and feces. Medical staff at the Justice Center noted that she had been having these symptoms for approximately five (5) hours prior to EMS arrival. A history of chronic Fentanyl and Meth use was also noted. EMS arrived at the Justice Center at approximately 11:25 P.M. on September 2, 2021 and Angela was transported to Upstate University Hospital via EMS where she was evaluated and released back to the Justice Center at approximately 8:00 A.M. on September 3, 2021.

104.    After Angela was transported to Upstate University Hospital on September 2, 2021, (arriving at said hospital just after midnight on September 3, 2021), a search was

conducted of her jail cell and a white pill identified as Buprenorphine Hydrochloride, a medication used to treat opioid dependance/addiction, was located in her cell along with a broken latex balloon. Instead of being provided with proper rehabilitation and medical treatment suitable for an individual in active detoxification from substances, Angela was written up for a violation of the inmate handbook for having said contraband and, upon her return to Defendants' facility in the morning of September 3, 2021, she was placed in administrative segregation.

105.    Defendants continued to fail to reasonably monitor Plaintiff's decedent, particularly given this history, and, upon information and belief, Plaintiff's decedent continued to display signs of detoxification nd continued to throw up throughout the day.

106.    Most significantly, upon information and belief, during a routine "tour" of POD 3C, (where Angela was housed), approximately twelve (12) minutes prior to Angela being found with a bed sheet tied around her neck, officers employed by Defendants observed Angela on her hands and knees throwing up in the toilet in her cell. It was also noted that the vomiting noises could be heard at the deputy's desk in the area in which her cell was located. Nonetheless, medical staff were not notified until approximately ten (10) minutes later and responded to the unit within two (2) minutes to find Angela unconscious and lying on the floor with her head near the rear of the toilet and a bedsheet wrapped around her neck and the rear of the toilet.

107.    By reason of the foregoing, Defendants, **ONONDAGA COUNTY** and **ONONDAGA COUNTY SHERIFF'S OFFICE, EUGENE J. CONWAY, as the Onondaga County Sheriff, ESTEBAN M. GONZALEZ, as the Chief Custody Deputy,** by and through their agents, servants, assigns, and/or employees, identified as the **"JOHN AND/OR JANE DOE"** Defendants, violated Angela's right to due process and to be free from cruel and unusual

punishment because, by its policies, customs, and practices, Onondaga County and the Onondaga County Sheriff's Office was/were deliberately indifferent to Angela's serious medical needs.

108.    Defendants, **ONONDAGA COUNTY** and **ONONDAGA COUNTY SHERIFF'S OFFICE, EUGENE J. CONWAY, as the Onondaga County Sheriff, ESTEBAN M. GONZALEZ, as the Chief Custody Deputy,** by and through their agents, servants, assigns, and/or employees, identified as the **"JOHN AND/OR JANE DOE"** Defendants, violated Angela's federal and state rights, as aforesaid, while acting under color of law.

109.    These policies, customs and practices of Defendants, **ONONDAGA COUNTY** and **ONONDAGA COUNTY SHERIFF'S OFFICE, EUGENE J. CONWAY, as the Onondaga County Sheriff,** and **ESTEBAN M. GONZALEZ, as the Chief Custody Deputy,** either individually or in combination, were direct and proximate causes of Angela's death.

110.    These deficient and substandard policies, customs, and practices, either on their face or as applied, either individually or in combination, were unrelated to any legitimate governmental interest or valid governmental objective.

111.    Defendants' actions undertaken pursuant to rules, policies, procedures, regulations, usages and practices violate the protections against cruel and unusual punishment guaranteed by the Eighth Amendment of the Constitution of the United States and the Fourteenth Amendment of the Constitution of the United States, and are, therefore, unconstitutional and unlawful pursuant to 42 U.S.C. § 1983.

112.    As a result of the foregoing, Decedent, Angela P. Peng, sustained serious and permanent personal injuries, including but not limited to: loss of Constitutional rights, both federal and state; acute fentanyl intoxication in an individual with asphyxia due to hanging;

related pain and suffering; loss of earnings and earnings capacity; pre-death conscious pain and suffering and mental anguish; and death.

113.   As a result of the foregoing, Plaintiff demands judgment against the municipal Defendants in the amount of $5,000,000.00.

114.   In addition, punitive damages against the municipal Defendants in an appropriate amount, as determined by the trier of fact of this action, are demanded and are warranted and proper due to the municipal Defendants' reckless and callous indifference to Angela's rights.

115.   Additionally, Plaintiff is entitled to an award of attorneys' fees and costs as may be recoverable by law, and demands the same accordingly.

**WHEREFORE**, Plaintiff, **LORI REYNOLDS**, on behalf of herself and her decedent, **ANGELA P. PENG**, on the first and second causes of action, demands judgment in an amount which exceeds the jurisdictional limits of all lower courts in the State of New York which would otherwise have jurisdiction, the precise amount of which is to be established by a jury at trial, plus costs and interest as allowed by law, as well as punitive damages against all Defendants.

109.   Further, Plaintiff, **LORI REYNOLDS**, on behalf of herself and her decedent, **ANGELA P. PENG**, on the third and fourth causes of action in the amount of $5,000,000.00 (five million dollars) on each respective cause of action, demands judgment thereon, and demands such other and further relief as the Court deems just and proper, including punitive damages, costs, interest, and attorneys' fees as may be recoverable by law.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure Rule 38 and related provisions of law, Plaintiff hereby demands trial by jury on all issues so triable.

**Dated:** November ___7___, 2022
Syracuse, New York

*Michael P. Kenny*
_____
Michael P. Kenny, Esq.
NDNY Bar Roll No.: 103123
Heidi M. P. Hysell, Esq.
NDNY Bar Roll No.: 516620
**KENNY & KENNY, PLLC**
*Attorneys for Plaintiff*
315 W Fayette Street
Syracuse, New York 13202
Tel: (315) 471-0524
mpkenny@kenny-kenny.com
h.hysell@kenny-kenny.com

TO:     County of Onondaga
        J. Ryan McMahon, II, County Executive
        John H. Mulroy Civic Center
        421 Montgomery Street, 14th Floor
        Syracuse, NY 13202

        Robert A. Durr, Esq., County Attorney
        Onondaga County Department of Law
        421 Montgomery Street, 10th Floor
        Syracuse, NY 13202

        Onondaga County Sheriff's Office
        407 South State Street
        Syracuse, NY 13202

        Eugene J. Conway, Sheriff
        Onondaga County Sheriff's Office
        407 South State Street
        Syracuse, NY 13202

        Esteban M. Gonzalez, Chief Custody Deputy
        Onondaga County Sheriff's Office
        407 South State Street
        Syracuse, NY 13202

Naphcare, Inc.
c/o Registered Agents Legal Services, LLC
1013 Centre Road, Suite 403S
Wilmington, DE 19805

John/Jane Does #1-#30
Onondaga County Sheriff's Office
407 South State Street
Syracuse, NY 13202

John/Jane Does #1-#30
Naphcare, Inc.
c/o Registered Agents Legal Services, LLC
1013 Centre Road, Suite 403S
Wilmington, DE 19805