UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LORI REYNOLDS, Individually and
as Administratrix of the Estate of
Angela P. Peng,                                                                    5:22-cv-01165 (BKS/TWD)

                                      Plaintiff,

v.

COUNTY OF ONONDAGA, TOBIAS J. SHELLEY as the
Onondaga County Sheriff, JOHN S. DRAPIKOWSKI as
the Chief Custody Deputy, NAPHCARE, INC.,
PROACTIVE HEALTH CARE MEDICINE, PLLC, and
JOHN/JANE DOES 1–30,

                                      Defendants.
_____

**Appearances:**

*For Plaintiff:*
Michael P. Kenny
Heidi M. P. Hysell
Kenny & Kenny, PLLC
315 West Fayette Street
Syracuse, NY 13202

*For Defendants County of Onondaga, Shelley, and Drapikowski:*
John A. Sickinger
Onondaga County Attorney's Office
421 Montgomery Street, 10th Floor
Syracuse, NY 13202

*For Defendant NaphCare:*
Dennis C. Hopkins
David A. Perez
Jessica R. Frenkel
LaMarte Williams, Jr.
Perkins Coie LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Lori Reynolds, individually and on behalf of the estate of Angela P. Peng, brings this wrongful death action alleging violations of the Eighth and Fourteenth Amendments and New York law arising out of Angela P. Peng's death while she was incarcerated at Onondaga County Justice Center ("OCJC"). (Dkt. No. 18 (Amended Complaint)). On January 26, 2023, Defendants Onondaga County, Shelley, and Drapikowski (collectively, "County Defendants") filed an Amended Answer to the Amended Complaint and asserted crossclaims against Defendants Proactive Health Care Medicine, PLLC ("Proactive") and NaphCare, Inc. (Dkt. No. 38). Presently before the Court is NaphCare's motion to dismiss Plaintiff's Amended Complaint and County Defendants' crossclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 47). Plaintiff and County Defendants oppose the motion. (Dkt. Nos. 54–56, 59, 60). For the reasons that follow, NaphCare's motion is granted in part and denied in part.

**II.    FACTS[1]**

**A.    Proactive, NaphCare, and County Defendants**

Proactive is "a provider of comprehensive medical and mental healthcare services to inmates of certain Onondaga County correctional facilities," including the OCJC. (Dkt. No. 18, ¶ 15). At some point prior to September 2021, Onondaga County and Proactive "contract[ed] to

---

[1] The facts are drawn from the Amended Complaint. (Dkt. No. 18). The Court does not consider the affirmations of Attorneys John A. Sickinger and Heidi Hysell, (Dkt. Nos. 54, 59), to the extent those attorney affirmations consist of attorney argument or characterization of the outside documents submitted, *see, e.g.*, *Timothy Coffey Nursery Landscape Inc. v. Soave*, No. 17-cv-1436, 2018 WL 11211498, at *1 n.1, 2018 U.S. Dist. LEXIS 240830, at *2 n.1 (E.D.N.Y. Jan. 8, 2018) (declining to consider affidavits and affirmations submitted by "both counsel of record" "to the extent these materials contain[ed] legal argument" on a motion to dismiss); N.D.N.Y. L.R. 7.1(b)(2)(A) ("An affidavit is not required for a motion pursuant to Fed. R. Civ. P. 12(b)(6)"); N.D.N.Y. L.R. 7.1(b)(2) ("An affidavit must not contain legal arguments."). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

provide correctional health care services" at the OCJC. (*Id.* ¶ 16). NaphCare "contracted with and was delegated by [] Proactive . . . to provide supportive management and administration services to inmates housed in [the OCJC]'s facility." (*Id.*). Proactive and NaphCare "were responsible for overseeing, managing and/or providing for the medical care of inmates" at the OCJC. (*Id.* ¶ 20).

The Defendant "deput[ies], officer(s), and/or guard(s) responsible for the care, custody, control, management, and supervision of [Peng], identified . . . as John/Jane Doe [1–30] were employed by" Onondaga County, the Onondaga County Sheriff's Office, and/or the Chief Custody Deputy. (*Id.* ¶ 19).

**B.     Angela P. Peng**

    **1.     2020 Driving While Intoxicated Conviction**

In 2020, Angela Peng was convicted of Driving While Intoxicated ("DWI"). (Dkt. No. 18, ¶ 31). On March 1, 2020, her pre-sentence investigation report was completed, and it contained "an extensive history and recitation of Ms. Peng's legal history, history of substance abuse, and history of suicide attempts." (*Id.* ¶ 33). Peng received a "sentence of three [] years of probation starting on July 21, 2020 and set to end on July 21, 2023." (*Id.* ¶ 31). As part of her probation, Peng was required to "attend, actively participate in, and successfully complete counseling, treatment, education, and employment programming and/or a self-help group as designated by her probation officer." (*Id.* ¶ 32).

    **2.     September 1, 2021—Probation Violation, Intake, and Detention**

On or about September 1, 2021, Angela Peng was remanded to the OCJC for violating her probation. (*Id.* ¶ 28). Upon admission, she did not receive "adequate suicide screening/evaluation, psychological [and/or] mental screening/evaluation, or medical screening/evaluation." (*Id.* ¶ 34). Following Peng's admission to the OCJC, "Defendants [] failed

to provide [Peng] with appropriate mental health counseling and other mental health treatment" and "appropriate evaluation and medical and/or mental health and/or detox treatment for an individual who was detoxing from Fentanyl and/or Meth." (*Id.* ¶¶ 35, 36).

### 3. September 2, 2021 to September 6, 2021—Hospitalization and Death

On September 2, 2021, Peng "was found lethargic and non-verbal laying on her jail cell floor covered in vomit and feces." (*Id.* ¶ 37). At 11:25 p.m. that same day, Emergency Medical Services ("EMS") arrived at the OCJC and transported Peng to Upstate University Hospital. (*Id.*). Medical staff at the OCJC "noted that [Peng] had been having these symptoms for approximately five [] hours prior to EMS['s] arrival" and noted her "history of chronic Fentanyl and Meth use." (*Id.*).

After Peng was transported to Upstate University Hospital, "a search was conducted of her jail cell and a white pill identified as Buprenorphine Hydrochloride, a medication used to treat opioid dependence/addiction, was located in her cell along with a broken latex balloon." (*Id.* ¶ 38). Peng was "written up for a violation of the inmate handbook for having said contraband." (*Id.*).

Following Peng's evaluation at Upstate University Hospital, she was "released back to the [OCJC] at approximately 8:00 a.m. on September 3, 2021." (*Id.* ¶ 37). Upon her return, Peng "was placed in administrative segregation" for violating the inmate handbook. (*Id.* ¶ 38).

On the afternoon or evening of September 3, 2021, "during a routine 'tour' of POD 3C, []where [Peng] was housed[] . . . officers employed by Defendants observed [Peng] on her hands and knees throwing up in the toilet in her cell." (*Id.* ¶ 43). "It was also noted that the vomiting noises could be heard at the deputy's desk in the area in which [Peng's] cell was located." (*Id.*). "[M]edical staff were not notified until approximately ten [] minutes later and responded to the unit within two [] minutes." (*Id.*). When medical staff arrived, they "found [Peng] . . .

4

unconscious and lying on the floor with her head near the rear of the toilet and a bedsheet wrapped around her neck and the rear of the toilet." (*Id.* ¶¶ 43, 44). Peng had "hanged herself in her cell using a bed sheet in an apparent self-strangulation incident." (*Id.* ¶ 42). "Shortly thereafter, a Code Blue was called and officers, deputies, employees and/or agents of Defendants . . . unsuccessfully attempted to revive [] Peng." (*Id.* ¶ 45).

EMS arrived at the OCJC and Peng "was transferred via ambulance to Upstate University Hospital where she remained in critical condition." (*Id.* ¶ 46). On September 6, 2021, Peng died at Upstate University Hospital "of an apparent suicide." (*Id.* ¶ 47).

### III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient to "raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### IV.    ANALYSIS

####    A.    Materials Outside the Complaint

NaphCare and County Defendants attach several documents to their submissions. (Dkt. Nos. 47-2, 47-3, 54-1 to 54-6). "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134

5

(2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). Even where a document is integral to the complaint, it must be "clear" that "no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner*, 463 F.3d at 134. "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Nicosia*, 834 F.3d at 231 (quoting Fed. R. Civ. P. 12(d)).

NaphCare submits an agreement between Proactive and Onondaga County and a Management Services Agreement between Proactive and NaphCare. (Dkt. Nos. 47-2, 47-3). The contracts are not attached to the Amended Complaint. The Amended Complaint alleges that NaphCare contracted with Proactive "to provide management and administration services to inmates housed in [the OCJC]" and that Proactive contracted with Onondaga County "to provide correctional health care services," (Dkt. No. 18, ¶¶ 16, 20, 67, 70). The Amended Complaint further alleges that in connection with these contracts the medical personnel employed by

6

Proactive and NaphCare had a duty to provide Peng with "reasonable and responsive medical care, including mental health and rehabilitative care." (*Id.* ¶ 68).

NaphCare argues that these agreements make clear that "*Proactive* is solely responsible for clinical services and that Naphcare's role is limited to *non-clinical* functions such as administrative support." (Dkt. No. 47-4 at 7–9 (emphases in original)). Even if the contracts were incorporated by reference in or integral to the Amended Complaint, County Defendants dispute the contracts' relevance, arguing that the "documentary evidence [of care by NaphCare employees] demonstrates that the management services agreement was not followed in practice by Naphcare employees in the OCJC." (Dkt. No. 56, at 7).[2] Thus, the Court will not consider the contracts.

County Defendants submit the New York State Commission on Correction's report regarding Ms. Peng's death ("Commission Report"). (Dkt. No. 55). The Commission Report is not attached to the Amended Complaint, incorporated by reference, or integral to the Amended Complaint. However, a redacted version of the Commission Report is publicly available on the Commission's website, and thus the Court may judicially notice the redacted version. *See Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, 544 F. Supp. 3d 405, 412 (S.D.N.Y. 2021) (explaining that, "when considering a motion made pursuant to Rule 12(b)(6), the Court may take judicial notice of 'documents retrieved from official government websites'" (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015))). The Court considers the Commission Report "in order 'to determine what statements [it] contained'—but '[] not for the truth of the matters asserted.'" *Roth v. Jennings*, 489 F.3d 499,

---

[2] County Defendants and Plaintiff cite to the references to NaphCare in the New York State Commission on Correction's report regarding Ms. Peng's death. (Dkt. 56 at 6-7; Dkt. 60, at 7-8). NaphCare argues, in response, that the Commission has "conflat[ed] NaphCare with Proactive." (Dkt. 62, at 12). The Court notes this only as evidence of disputed issues of fact regarding the relevance of the agreements.

7

509 (2d Cir. 2007) (emphases omitted) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

Further, County Defendants submit a September 27, 2022 letter from the Commission to Dr. Jeffrey Alvarez, NaphCare's Chief Medical Officer. (Dkt. No. 54-4). The letter is not attached to, incorporated by reference into, or integral to the Amended Complaint. (*See* Dkt. No. 18). County Defendants argue that the letter is a public "record[] of [a] state administrative proceeding[]." (Dkt. No. 54, ¶ 14). However, it is "not clear on [the letter's] face that [it is] part of the administrative record, nor do[] [County Defendants] proffer any sort of showing that [it] is publicly available." *Sahni v. Staff Att'ys Ass'n*, No. 14-cv-9873, 2016 WL 1241524, at *6, 2016 U.S. Dist. LEXIS 37940, at *16–17 (S.D.N.Y. Mar. 23, 2016), *modified on other grounds on reconsideration*, 2016 WL 3766214, 2016 U.S. Dist. LEXIS 64053 (S.D.N.Y. May 13, 2016). Thus, the Court will not take judicial notice of the letter.

County Defendants submit Peng's mental health screening and suicide health screening records. (Dkt. Nos. 54-5, 54-6). The Amended Complaint alleges that Peng "was never given an adequate suicide screening/evaluation, psychological/mental screening/evaluation, or medical screening/evaluation." (Dkt. No. 18, ¶ 34). Such references are insufficient to incorporate the screenings by reference. Further, the screenings are neither attached to nor integral to the Amended Complaint. Thus, the Court will not consider the screenings.[3]

---

[3] County Defendants also submit affidavits from "[t]wo of Ms. Peng's healthcare providers" which are "part of the official file kept by the [Onondaga County Sheriff's Office] regarding the investigation of Ms. Peng's death" and argue that the Court may take judicial notice of them as public records. (Dkt. No. 54, ¶ 8; *see* Dkt. Nos. 54-1, 54-2). County Defendants submit the affidavits because, in them, the providers state that they were employed by NaphCare. (Dkt. No. 54, ¶¶ 8–10). Even assuming the Court could properly take judicial notice of the affidavits as public records, it could not consider "the truth of the matters asserted" therein, and thus the Court cannot consider the affidavits for County Defendants' stated purpose. *Roth*, 489 F.3d at 509. The Court therefore does not take judicial notice of them. Because the Court will not consider the affidavits, it also will not consider the Rule 26 Initial Disclosures submitted by NaphCare for the purpose of disputing the affidavits' accuracy. (Dkt. No. 62, at 9–10).

B.      NaphCare's Motion to Dismiss Plaintiff's Claims

Plaintiff asserts claims against NaphCare for wrongful death, survival, and negligence. (*See* Dkt. No. 18, ¶¶ 65–78). NaphCare moves to dismiss all claims against it, arguing that Plaintiff makes no specific allegations about NaphCare's conduct but uses "vague and conclusory allegations" that "lump" NaphCare and Proactive together, (Dkt. No. 47-4, at 14, 16), and that there are no factual allegations "about any actual conduct *NaphCare took* that could have caused Ms. Peng's injuries," (*id.* at 14 (emphasis in original)).[4] Plaintiff responds that the Amended Complaint sufficiently alleges NaphCare's involvement in Peng's death. (Dkt. No. 60, at 7).

Federal Rule of Civil Procedure 8(a)(2) states that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." "It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes." *Canon U.S.A., Inc. v. F&E Trading LLC*, No. 15-cv-6015, 2017 WL 4357339, at *7, 2017 U.S. Dist. LEXIS 160994, at *18 (E.D.N.Y. Sept. 29, 2017) (quoting *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 236 (S.D.N.Y. 2014)). However, "nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each." *Id.* (quoting *Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co., Ltd.*, No. 13-cv-7639, 2015 WL 4040882, at *4, 2015 U.S. Dist. LEXIS 86653, at *12 (S.D.N.Y. July 2, 2015)).

Here, Plaintiff adequately alleges NaphCare's involvement in her wrongful death claim. Plaintiff alleges that NaphCare contracted with Proactive to "provide supportive management

---

[4] The vast majority of Plaintiff's and NaphCare's arguments are based on documents that the Court may not consider at this stage. (Dkt. No. 47-4, at 13–15; Dkt. No. 60, at 9). Because the Court cannot consider the documents, it will only consider the few arguments that do not rely on them.

9

and administration services to inmates housed in [the OCJC]." (Dkt. No. 18, ¶ 16). Plaintiff further alleges that NaphCare is a "correctional healthcare services provider" and that "medical personnel employed and/or otherwise retained by [Proactive] and/or [NaphCare] were responsible for overseeing, managing and/or providing for the medical care of inmates." (*Id.* ¶¶ 20, 68). Although such an allegation refers to both Proactive and NaphCare, Plaintiff asserts identical claims of negligence against them based on their employees' conduct. (*See id.* ¶ 72); *Canon U.S.A., Inc.*, 2017 WL 4357339, at *7, 2017 U.S. Dist. LEXIS 160994, at *18.

Moreover, NaphCare's argument that the Amended Complaint must be dismissed because Plaintiff fails to plausibly allege *NaphCare's* conduct contributed to Peng's injuries misses the mark. Plaintiff asserts that NaphCare is negligent under a theory of vicarious liability, (Dkt. No. 18, ¶¶ 20, 72), which allows an employer to be held "liable when the employee acts negligently or intentionally" "within the scope of the employment," *RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 2 N.Y.3d 158, 164 (2004). Plaintiff alleges that NaphCare and Proactive employed medical personnel in the OCJC and that NaphCare "utilized its STATCare telehealth process," which was "powered by NaphCare['s] TechCare system," "to provide onsite clinicians with access to a centralized team of Nurse Practitioners [NPs] to support the fast-paced intake process" and that NaphCare did so "24 hours a day, 7 days a week, to take crucial steps within hours of booking to stabilize patients and initiate treatments." (*Id.* ¶ 69). Based on these allegations, any negligence on the part of medical personnel in the OCJC in treating Peng "would have necessarily been committed by one or more of [NaphCare's or Proactive's] employees acting within the scope of their employment." *James v. Monroe Cnty.*, No. 20-cv-7094, 2022 WL 17155831, at *17, 2022 U.S. Dist. LEXIS 211669, at *42 (W.D.N.Y. Nov. 22, 2022) (citations

10

omitted). Thus, Plaintiff's allegations give NaphCare fair notice of the wrongful death, survival, and negligence claims.

NaphCare argues that Plaintiff's STATCare allegations are insufficient because her "only allegation related to intake procedures is in a claim against the government Defendants." (Dkt. No. 47-4, at 14). However, Plaintiff alleges that "when [Peng] was remanded to the [OCJC]," she "was never given an adequate suicide screening/evaluation, psychological/mental screening/evaluation, or medical screening/evaluation." (Dkt. No. 18, ¶ 34). Peng also alleges that STATCare, which "provided" Nurse Practitioners, was used "to take crucial steps within hours of booking to stabilize patients and initiate treatments." (*Id.* ¶ 69). These allegations, taken together, plausibly allege that NaphCare's employees were involved in—and negligent during—Peng's intake process.[5]

Further, Plaintiff plausibly alleges that the conduct of NaphCare's employees was a proximate cause of Peng's death. In a wrongful death claim, plaintiff bears the burden of showing, inter alia, "a wrongful act, neglect or default of the defendant that caused the decedent's death."[6] *Matthias v. United States*, 475 F. Supp. 3d 125, 143 (E.D.N.Y. 2020) (citation omitted); *see* N.Y. Est. Powers & Trusts Law § 5-4.1. A plaintiff plausibly alleges this element by pleading a plausible negligence claim, which requires that a plaintiff establish, inter alia, that a defendant's breach of a duty owed to the plaintiff "was a proximate cause of injury to

---

[5] In its response, NaphCare cites *Twombly* for the assertion that "Plaintiff's allegation with respect to NaphCare's STATCare telehealth process cannot [] be sustained because it lacks specificity." (Dkt. No. 62, at 8). However, in *Twombly*, to satisfy the 12(b)(6) pleading requirement, the Supreme Court "[did] not require heightened fact pleading of *specifics*, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570 (emphasis added). Thus, even assuming Plaintiff's STATCare allegations lacked specificity, it is not fatal to her claim at this stage.

[6] To state a wrongful death claim, Plaintiff must also show "the death of a human being," "the survival of distributees who suffered pecuniary loss by reason of the decedent's death," and "the appointment of a personal representative of the decedent." *Matthias*, 475 F. Supp. 3d at 143 (citation omitted). NaphCare does not argue that Plaintiff fails to allege any of these elements. (*See generally* Dkt. No. 47-4).

11

the plaintiff." *Lara-Grimaldi v. Cnty. of Putnam*, No. 17-cv-622, 2018 WL 1626348, at *22 n.20, 2018 U.S. Dist. LEXIS 54686, at *63 n.20 (S.D.N.Y. Mar. 29, 2018) ("[N]egligence is an element of a wrongful death claim."); *Case v. Anderson*, No. 16-cv-983, 2017 WL 3701863, at *20, 2017 U.S. Dist. LEXIS 137118, at *55 (S.D.N.Y. Aug. 25, 2017) ("[I]f [the plaintiff] . . . pleads a plausible negligence claim, then she may also assert a claim for wrongful death as long as she has suffered a pecuniary loss as a result of his passing.").[7] In evaluating whether a defendant's actions proximately caused a suicide, the New York Court of Appeals has clarified that the issue is "whether the defendants' negligence *substantially contributed* to [the decedent's] death." *Case*, 2017 WL 3701863, at *27, 2017 U.S. Dist. LEXIS 137118, at *73 (alteration and emphasis in original) (quoting *Fuller v. Preis*, 35 N.Y.2d 425, 433 (1974)).

Here, Plaintiff alleges that Peng was a "recovering heroin and alcohol addict with a history of suicide attempts," and that her "history was well-known to Defendants." (Dkt. No. 18, ¶¶ 27, 31). Plaintiff also alleges that medical staff at the OCJC noted that Peng had "[a] history of chronic Fentanyl and Meth use." (*Id.* ¶ 37). Given the medical staff's alleged knowledge of Peng's history, it is plausible that NaphCare's and/or Proactive's employees' alleged failures during the intake process, (*id.* ¶ 34), and their alleged failure to "place [Peng] on constant watch and monitor her with reasonable care" following her return from Upstate University Hospital,

---

[7] Neither party addresses whether Plaintiff's claim is more appropriately considered a medical malpractice action or an ordinary negligence action. A medical malpractice claim requires a showing of "(1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of injury or damage." *Schoolcraft v. City of N.Y.*, 103 F. Supp. 3d 465, 534 (S.D.N.Y. 2015) (citing *Stukas v. Streiter*, 918 N.Y.S.2d 176, 184 (N.Y. 2011)). Because both negligence and medical malpractice claims require proximate causation and "there is no prohibition against simultaneously pleading both an ordinary negligence cause of action and one sounding in medical malpractice," the Court need not determine whether the action sounds in medical malpractice at this time. *Jones v. Beth Israel Hosp.*, No. 17-cv-3445, 2018 WL 1779344, at *9, 2018 U.S. Dist. LEXIS 62228, at *24 (S.D.N.Y. Apr. 12, 2018) (collecting cases); *see Gilinsky v. Indelicato*, 894 F. Supp. 86, 94 n.5 (E.D.N.Y. 1995) (declining to determine at the summary judgment stage "whether [the] action [was] more appropriately considered a medical malpractice action, as opposed to an ordinary negligence claim, because the defendant [did] not assert the [differing] statute[s] of limitations as an affirmative defense").

12

(*id.* ¶ 41), substantially contributed to Peng's death,[8] *see Case*, 2017 WL 3701863, at \*27–29, 2017 U.S. Dist. LEXIS 137118, at \*74, \*75, \*78 (finding that the defendant's "alleged negligence may have substantially contributed to putting [the decedent] in harm's way" where "as to each set of Defendants, there were opportunities at each juncture to avoid the harm which occurred").

Accordingly, the Court denies NaphCare's motion to dismiss Plaintiff's claims against it.

### C. Motion to Dismiss County Defendants' Crossclaims[9]

NaphCare moves to dismiss County Defendants' contribution and common law indemnification crossclaims. (Dkt. No. 47-4, at 17–19).

#### 1. Contribution Crossclaim

NaphCare argues that County Defendants' contribution crossclaim must be dismissed because, based on Plaintiff's allegations, it "did not cause or even contribute to Ms. Peng's injuries." (Dkt. No. 47-4, at 17). County Defendants respond that "[t]he [Amended] [C]omplaint details a number of alleged deficiencies on the part of NaphCare employees with regard to Ms. Peng's care." (Dkt. No. 56, at 7).

Under New York law, "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among

---

[8] NaphCare's reliance on *Krivchenko v. Clintondale Aviation, Inc.* is misplaced. No. 13-cv-820, 2014 WL 4684808, 2014 U.S. Dist. LEXIS 131357 (N.D.N.Y. Sept. 18, 2014); (*see* Dkt. No. 47-4, at 16–17). In *Krivchenko*, the Court granted Clintondale's motion for summary judgment because "no evidence indicate[d] that Clintondale itself was involved in any conduct that breached a duty to Plaintiffs or directly caused Plaintiffs harm" and "[t]he evidence provide[d] no basis for finding Clintondale liable for the conduct of RusAir." 2014 WL 4684808, at \*5–6, 2014 U.S. Dist. LEXIS 131357, at \*18. However, in the instant action, NaphCare's liability is based on its own employees' conduct, which Plaintiff plausibly alleges substantially caused the events resulting in Peng's death. For the same reason, the Court does not reach NaphCare's argument that Plaintiff and County Defendants waived the argument that NaphCare can be held liable for Proactive's conduct because they are related entities. (Dkt. No. 62, at 10–11).

[9] In evaluating County Defendants' crossclaims, the Court considers the allegations set forth in the crossclaims and the Plaintiff's Amended Complaint. *See Mathis v. United Homes, LLC*, 607 F. Supp. 2d 411, 419 (E.D.N.Y. 2009) (explaining that, "in determining the adequacy of the [] Defendants' [] cross-claims, the court shall consider the allegations set forth in the cross-claims and the plaintiffs' complaints, which [were] integral to the cross-claims").

them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." N.Y. C.P.L.R. § 1401. "A third party will be liable for contribution only if shown to have had a part in causing or augmenting the injury for which contribution is sought." *Hunter v. Deutsche Lufthansa AG*, No. 09-cv-3166, 2013 WL 752193, at *8, 2013 U.S. Dist. LEXIS 27028, at *23 (E.D.N.Y. Feb. 27, 2013) (quoting *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*, 71 N.Y.2d 599, 602–03 (1988)).

As explained above, Plaintiff alleges that NaphCare operated STATCare, which was used "to take crucial steps within hours of booking to stabilize patients and initiate treatments." (Dkt. No. 18, ¶¶ 68, 69). Plaintiff alleges that Peng had "a history of suicide attempts" but failed to receive adequate suicide screening or evaluation upon admission to the OCJC. (*Id.* ¶ 33). Further, Plaintiff alleges that Peng "hanged herself in her cell" on September 3, 2021—the same day that she was re-admitted to the OCJC following her time at Upstate University Hospital. (*Id.* ¶ 42). Thus, the Amended Complaint plausibly alleges that NaphCare's failure to treat and evaluate Peng during her initial intake process or upon her re-admission could have caused or augmented Peng's injuries. *See Marchiano v. Berlamino*, No. 10-cv-7819, 2011 WL 4829931, at *2, 2011 U.S. Dist. LEXIS 117863, at *4 (S.D.N.Y. Oct. 11, 2011) (finding that a plaintiff's contribution claim survived a motion to dismiss where "the Third-Party Complaint [did] not establish how much of a role [the third-party defendant] actually played in the decision to terminate Marchiano, [but] it [did] plead sufficient facts to plausibly establish that she played *some* role in it" (emphasis in original)). Thus, Plaintiff has plausibly alleged that NaphCare caused or augmented Peng's injuries.

Accordingly, the Court denies NaphCare's motion to dismiss County Defendants' contribution crossclaim.

### 2. Indemnification Crossclaim

NaphCare argues that County Defendants' common law indemnification claim must be dismissed because "NaphCare owed no duty to the County." (Dkt. No. 47-4, at 18). NaphCare also argues that because County Defendants failed to respond to its argument regarding duty, they have abandoned the indemnification claim. (Dkt. No. 62, at 14 (citations omitted)).

Under New York law, the right to indemnification operates to shift liability from one party to another and arises from either an express or implied contract. *McDermott v. City of New York*, 50 N.Y.2d 211, 216 (1980). "[T]he key element of a common-law cause of action for indemnification is not a duty running from the indemnitor to the injured party, but rather is 'a separate duty owed the indemnitee by the indemnitor.'" *Raquet v. Braun*, 90 N.Y.2d 177, 183 (1997) (quoting *Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680, 690 (1990)).

Here, the Court declines, in its discretion, to deem the indemnification claim abandoned by County Defendants because they argue that their "cross-claims" should not be dismissed, indicating that they intend to pursue both of their cross claims. (Dkt. No. 56, at 6–7). However, County Defendants fail to respond to NaphCare's argument regarding the necessity of a duty owed, (*see id.*), and thus the argument is conceded, *see Felske v. Hirschmann*, No. 10-cv-8899, 2012 WL 716632, at *3, 2012 U.S. Dist. LEXIS 29893, at *9 (S.D.N.Y. Mar. 2, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them."). County Defendants' failure to allege a duty owed it by NaphCare is fatal to its claim. *See Greenberg v. Blake*, 985 N.Y.S.2d 279, 281 (App. Div. 2014) (affirming the dismissal of a common law indemnification claim where "the third-party complaint [did] not allege the existence of any duty owed by the third-party defendants to the third-party plaintiff" (citations omitted)).

Thus, NaphCare's motion to dismiss County Defendants' common law indemnification crossclaim must be granted. However, County Defendants "reserve the right to amend . . . [their] answer," (Dkt. No. 38, ¶ 63), and the Court grants leave to replead the indemnification claim.

## V.  CONCLUSION

For these reasons, it is hereby

**ORDERED** that NaphCare's motion to dismiss Plaintiff's Amended Complaint (Dkt. No. 47-4) is **DENIED**; and it is further

**ORDERED** that NaphCare's motion to dismiss County Defendants' crossclaims is **GRANTED in part and DENIED in part** (Dkt. No. 47-4); and it is further

**ORDERED** that County Defendants' indemnification crossclaim is **DISMISSED without prejudice** and with **leave to replead**, and it is further

**ORDERED** that County Defendants may file an amended pleading within thirty (30) days from the date of this Order.

**IT IS SO ORDERED.**

Dated: August 14, 2023
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge