# PERKINSCOIE

1201 Third Avenue                    +1.206.359.8000
Suite 4900                           +1.206.359.9000
Seattle, WA 98101-3099               PerkinsCoie.com

January 31, 2024

Stephanie D. Olson
SOlson@perkinscoie.com
D.  +1.206.359.3025
F.  +1.206.359.9000

**VIA ECF**

Hon. Therese Wiley Dancks
United States Magistrate Judge
James M. Hanley Federal Building
100 South Clinton Street
Syracuse, New York 13202

Re:    *Reynolds vs. County et al.*, No. 5:22-CV-1165
       **Request for Conference**

Dear Judge Dancks:

      This firm represents NaphCare, Inc. ("NaphCare") in the above-referenced action. NaphCare has encountered numerous deficiencies in the County's discovery responses, which it has attempted to address through several meet and confers. But the County has consistently refused to engage in meaningful discussions or provide full and complete responses. The County has also refused to cooperate with the parties on submitting a joint status report, and instead proceeded unilaterally to file their own status report that is partisan, incomplete, and misleading. *See* Decl. of Stephanie Olson ("Olson Decl.") Ex. C. NaphCare therefore respectfully requests a conference and the Court's guidance on: 1) procuring the County's full and complete responses to the discovery requests outlined below, and available dates for their witnesses; 2) obtaining a fulsome explanation of what appears to be significant and case-dispositive spoliation by the County of critical video evidence that should have been preserved; and 3) addressing the deposition of an apex NaphCare witness.

## I.    Case Background

      As you know, this case concerns an inmate who committed suicide at the Onondaga County Justice Center ("Jail") after being incarcerated from September 1 to 3, 2021. On September 2, she was found lethargic in her cell covered in vomit and feces. A white pill was also found hidden under her mattress, which the County had not caught or confiscated during their prior searches of Peng or her cell. After spending the night in the hospital, Peng returned to Jail the following morning and refused multiple medical assessments throughout the day. County deputies noticed Peng vomiting again at 9:00 p.m. but waited at least ten minutes before seeking medical attention. Nurses responded two minutes later, and a deputy escorted them to Peng's cell. By that time, Peng had tied a sheet around her neck to hang herself. Despite attempts to resuscitate her, she was rushed to the hospital and pronounced dead several days later.

Judge Dancks
January 31, 2024
Page 2

Peng's estate sued the County, NaphCare, Proactive, and their employees. It alleged negligence and constitutional claims against the County and its employees, and only negligence claims against NaphCare, Proactive, and their employees. The County, Proactive, and NaphCare then alleged crossclaims of contribution and indemnification against each other. The parties have exchanged several sets of discovery requests, and this Court extended several pre-trial deadlines during a status conference held on December 13, 2023. The deadline for the next status report is today, January 31, 2024.

The video evidence of Peng's time in jail, and particularly of the medical care she received, is important. But as outlined below, the County has refused to produce all the videos, and now for the first time the County appears to be *admitting* what it previously failed to disclose to any party: that it destroyed evidence relating to Ms. Peng's stay at the jail, which would constitute spoliation.

## II.     The County's Deficient Discovery Responses

NaphCare has attempted to resolve numerous issues with the County over its deficient discovery responses and document productions over the last several months. NaphCare and the County have met and conferred telephonically three times on January 5th, 18th, and 29th to discuss the County's: i) untimely responses and productions; ii) baseless objections; iii) incomplete responses; and iv) missing documents. *See* Olson Decl. Ex. A, B, and C. The County has persisted in standing on inapplicable objections and deficient productions. *See id.* NaphCare therefore respectfully requests a conference and the court's guidance on: 1) procuring the County's full and complete responses to the discovery requests outlined below, and available dates for their witnesses; 2) obtaining a fulsome explanation of what appears to be significant and case-dispositive spoliation by the County of critical video evidence that should have been preserved; and 3) addressing the deposition of an apex NaphCare witness.

### 1.  The County should provide complete responses and productions.

First, NaphCare requests the Court's guidance on procuring complete responses and documents pertaining to the discovery requests outlined below.

#### a.  The County has waived all objections to NaphCare's Third Set of Discovery Requests by serving untimely responses (ROGs 16–21; RFPs 20–27; RFAs 28–29).

At the outset, the County should produce fulsome responses without any objections to NaphCare's Third Set of Discovery Requests ("3rd Set") because of its failure to serve timely responses. "It is well established that by failing to respond or object to a discovery request in a timely manner, a party waives any objection which may have been available. The case law

Judge Dancks
January 31, 2024
Page 3

in this Circuit on this very issue is legion." *Sanchez v. Aircraft Finishing Corp.*, No. 21CV02309PKCJMW, 2022 WL 4121391, at *2 (E.D.N.Y. Sept. 9, 2022) (collecting cases).

Only two things can extend discovery deadlines: a court order or the parties' stipulation. *Sanchez*, 2022 WL 4121391, at *2. Courts particularly disapprove of responding parties' attempts to unilaterally set their own timeline for responding. *See Sanchez*, 2022 WL 4121391, at *1 ("Once again, at no time did Defendants seek an extension from the Court or request further courtesies from Plaintiffs. Rather, in effect, Defendants' counsel, with a moderate degree of hubris, advised Plaintiffs when they could expect to receive the responses."). And when parties have belatedly responded with boilerplate objections and responses without substance, courts have ordered them to re-serve fulsome responses without objections. *See Chowdhury v. Hamza Express Food Corp.*, No. 14-CV-150 (JBW), 2014 WL 12834831, at *2 (E.D.N.Y. Sept. 25, 2014) (compelling a defendant to respond to interrogatories and document demands without objections after it responded to the requests after the deadline with "a series of boilerplate and baseless objections").

The County's belated discovery responses to the 3rd Set is the exact type of delay that justifies the waiver of its objections. Despite NaphCare's early and often reminders about the deadline to respond to the 3rd Set, the County eventually served its responses nineteen days late, on January 19, 2024. Olson Decl. Ex. D (County Responses to the 3rd Set). Prior to serving the 3rd Set, the County failed to request any extension from the Court or NaphCare. It also refused to provide *any* deadline for its responses when asked and instead made vague promises that it would try to respond within two weeks.

The County tried to shrug off its delay by pointing to the December 13 status conference and its belief that the Court had somehow extended discovery deadlines—even though the order resulting from that conference (which extended other deadlines) omitted any reference to discovery deadlines whatsoever. *See* Dkt. 113. In accordance with the black-letter law of this circuit, the County should re-serve its responses to the 3rd Set by a date certain without any objections.

**b.  The County should fully respond about its view on the Report (ROG 11).**

Although the County has predicated its case against NaphCare on the Report, it has consistently refused to state whether it agrees with the facts contained within it. NaphCare's **ROG 11,** served on August 28, 2023, asks the County to "state whether you disagree with any facts in the Report;[1] and if you disagree with any facts therein, describe with specificity Your disagreement with those facts." Olson Decl. Ex. E (NC 2nd Set of Requests).

---

[1] The "Report" refers to the Final Report of the New York State Commission of Correction, In the Matter of the Special Investigation into the Care and Treatment Provided to Angela Peng,

Judge Dancks
January 31, 2024
Page 4

The County first responded over a month and a half later with boilerplate objections and pointed only to a *Proactive* document that erroneously listed 9:02 p.m. as the time *their* deputies called for medical staff on the night of Peng's suicide attempt. Olson Decl. Ex. F (County's Responses to NC 2nd Set). They refused to agree with the Report that their deputies called for medical staff at 9:10, which their deputies admitted in sworn statements during the County's internal investigation of Peng's suicide. Olson Decl. Ex. G (County sworn statement).

Although questioned about the incompleteness of this response in early November, the County served a supplemental response nearly three months later, on January 3, 2024. Ex. H (County Suppl. RESPs to NC 2nd Set). Their supplemental responses were even more incomplete than before: this time, the County offered more boilerplate and inapplicable objections and refused to answer outright. *See* Olson Decl. Ex. H (County Suppl. RESPs to NC 2nd Set) (County objecting on the grounds that, "to the extent that the demand is overbroad, ambiguous, premature, vague and calls for expert opinion. County Defendants further object that information relevant to this demand is solely in the possession of NaphCare and/or Proactive. The Report speaks for itself and the determination of whether any content in the Report is correct/incorrect is subject to further discovery."). But none of their objections apply.

***First,*** ROG 11 is very specific: it simply asks whether the County disagrees with any facts in the Report, several of which solely pertain to the County. The County's boilerplate objections based on "vagueness" are inapplicable, and in any event, do not suffice without further explanation. *See Integrated Structures Corp. v. Liberty Mut. Ins. Co.*, No. 21-CV-1744-ARR-SJB, 2022 WL 16786747, at *1 (E.D.N.Y. Aug. 9, 2022) ("an objection that something is vague, ambiguous and overbroad, is vacuous boilerplate." (cleaned up)); *Jacoby v. Hartford Life & Acc. Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y. 2009) ("Defendant responded to plaintiff's two document requests and interrogatories with boilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy. It [in] fact produced no documents and answered no interrogatories. Its responses are a paradigm of discovery abuse.").

***Second,*** the Report contains information squarely within the County's knowledge. Specifically, it provides a detailed timeline of when County deputies first noticed Peng's vomiting, and when County deputies first notified medical staff. *See* Olson Decl. Ex. I (Report), ¶¶ 36–37. Contrary to the County's argument, the requested information is not "solely within the possession" of other parties.

***Third,*** ROG 11 asks for the County's *view* on facts within the Report; it is not asking the County to restate the Report's facts. As noted, the County made its view on the Report

an incarcerated individual of the Onondaga County Justice Center, dated September 27, 2022.

Judge Dancks
January 31, 2024
Page 5

acutely relevant by predicating its case against NaphCare on the report. *See* Olson Decl. Ex. J (County Response to NC ROG 2). An objection that the "Report speaks for itself" doesn't apply.

*Fourth,* the County is obligated to provide complete responses based on what it currently knows. It cannot sidestep a response by arguing that discovery is not yet complete— otherwise, parties could simply delay all responses until the close of discovery. *See Trueman v. New York State Canal Corp.*, No. CIV.109-CV-049LEK/RF, 2010 WL 681341, at *3 (N.D.N.Y. Feb. 24, 2010) ("The responding party must make an effort to answer with the information reasonably available to it and . . . is not excused from making its disclosure because it has not fully investigated the case . . . ." (cleaned up)). The County should have some direct knowledge of the facts in the Report given that it describes their employees' conduct.

*Fifth,* the County has failed in its obligation to meet and confer in good faith by refusing to engage in any meaningful discussion about the applicability of its objections. *See* Local Rule 37.1(f) ("If a party fails or refuses to confer in good faith with the requesting party, thus requiring the request for a discovery conference, the Court, at its discretion, may subject the resisting party to the sanction of the imposition of costs, including the attorney's fees of opposing party in accordance with Fed. R. Civ. P. 37."). When NaphCare explained how each of the County's objections did not apply, the County had no response and stood by its objections without further explanation.

The County's boilerplate objections are inapplicable, and it should provide a full response. Notably, the County omitted any reference to ROG 11 in their status report, Dkt. 117, which is another reason why the parties should have cooperated in filing a joint report.

### c. The County should produce information and documents related to prior related incidents and cell searches (ROGs 16, 18; RFPs 21, 23, 26).

Based on purported relevancy grounds, the County has also refused to respond to requests seeking information and documents about prior incidents where the County failed to catch and confiscate contraband, delayed notifying medical staff regarding inmates' medical conditions, or conducted searches during Peng's incarceration. But "'[r]elevance' under Rule 26(b)(1) of the Federal Rules of Civil Procedure has been construed broadly to include any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Sullivan v. StratMar Sys., Inc.*, 276 F.R.D. 17, 19 (D. Conn. 2011) (cleaned up and citation omitted). Moreover, parties objecting on "overly broad" and "unduly burdensome" grounds "must do more than simply intone the familiar litany that the interrogatories are burdensome, oppressive or overly broad. Instead, the objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering

Judge Dancks
January 31, 2024
Page 6

evidence revealing the nature of the burden." *Sullivan v. StratMar Sys., Inc.*, 276 F.R.D. 17, 19 (D. Conn. 2011).

The County has failed to explain any of its objections here. ROGs 16 and 18 ask the County to describe all incidents in the last ten years where the County didn't catch contraband or notify medical staff of inmates' medical issues, RFPs 21 and 23 ask for documents relating to any of those incidents, and RFP 26 asks for documents pertaining to inmate searches conducted during Peng's incarceration. Olson Decl. Ex. D (County RESPs to 3rd Set). The County responded with boilerplate objections that the requests were improper, overly burdensome, and irrelevant because they involved other inmates. *Id.*

The County was unable to explain how the requests were overbroad and unduly burdensome in a meet and confer and generally refused to engage in any meaningful discussion, let alone come to any agreements. It also categorically rebuffed NaphCare's good faith attempts at reaching any agreements: even though the *County* bears the burden of justifying its boilerplate redactions, NaphCare said it was willing to explore ways to narrow the request. The County still refused to engage. This appears to stem from a mistaken belief about the County's own burden: NaphCare is certainly willing to explore ways to reach a compromise between the parties, but it cannot address the County's specific concerns if the County refuses to articulate them.

And as explained during the meet and confer, this information might reveal a pattern and practice of the County's negligence with respect to the County procedures and failures at issue in *this* case, and therefore directly pertain to the County's liability. If the County really faces such a "burden" in listing prior incidents where they failed to catch contraband or timely notify medical staff, it suggests that such incidents occurred far more than once and therefore bolsters the need for this information. The County should provide complete responses and documents.

### d. The County should provide fulsome responses about its document preservation efforts (ROG 19, RFP 19).

During meet and confers, the County has also refused to describe the preservation efforts it took in this case or even confirm that it preserved all footage of Peng's incarceration. ROG 19 asks the County to describe the document preservation procedures it took in this case and RFP 19 asks the County to produce all video footage of the Jail relating to Peng's incarceration. Olson Decl. Ex. D and F. In response, the County simply pointed to document preservation procedures, without any reference or explanation whether it followed those procedures *in this case*. Olson Decl. Ex. D. That response is incomplete: *simply because the County has document procedures does not mean that it followed them here*. And the production thus far suggests that it didn't. As explained to the County, nearly two days of video footage is missing from Peng's three-day incarceration, which is detailed and highlighted below in a chart drafted by the Plaintiff:

Judge Dancks
January 31, 2024
Page 7

| 1 | 9/1/21 | 12:06-12:29 | Sally Port – Booking – Holding Cell<br>(25:01 converted -11 total views, converted only those showing action, only video that also has audio) |
|---|---|---|---|
| N/A | 9/1/21-9/2/21 | 12:30-22:49 | MISSING – NO CD PROVIDED |
| 2 | 9/2/21-9/3/21 | 22:50-00:07 | Pod 3C – Sally Port (when Angela taken to Upstate)<br>(1:36:04 converted -13 total views, converted only those showing action) |
| N/A | 9/3/21 | 00:08-8:02 | ANGELA NOT AT OCJC – AT UPSTATE |
| 3 | 9/3/21 | 08:03-8:32 | Sally Port – Booking – Elevator – Pod Core – Pod 3C<br>(14:32 converted – 11 total views, converted only those showing action) |
| 4 | 9/3/21 | 8:30-13:00 | Pod 3C Pan-Tilt-Zoom<br>Pod 3C Stationary<br>(4:38:51 converted – all views) |
| 4 | 9/3/21 | 13:00-16:55 | Pod 3C Pan-Tilt-Zoom<br>Pod 3C Stationary<br>(4:09:23 converted – all views) |
| 5 | 9/3/21 | 16:55-22:35 | Pod 3C Pan-Tilt-Zoom<br>Pod 3C Stationary<br>(5:52:50 converted – all views) |
| 6 | 9/3/21 | 20:41:22:35 | Pod 3C to Core<br>Pod 3C Pan-Tilt-Zoom<br>Pod 3C Stationary<br>(2:10:47 converted – all views) |
| 7 | 9/3/21 | 21:21-21:48 | Pod 3C to Core to Elevator to Booking Hallway to Sallyport<br>(37:26 converted - 14 total views, converted only those showing action, cut off when Angela's ambulance left sally port) |

According to medical records, the missing videos from September 1, 12:30 p.m. though September 2, at 10:50 p.m., would capture at least the following medical interactions that are relevant to the claims and defenses in this case:

➤ Supplemental intake screening at 3:58:53 p.m. on 9/1
➤ Vitals at 3:59:59 p.m. on 9/1
➤ Columbia Suicide Screening at 4:00:24 p.m. on 9/1
➤ Comprehensive Detox Screen at 4:04:01 p.m. on 9/1
➤ COWS Assessment at 4:04:01 p.m. on 9/1
➤ Receiving screening 4:07:03 p.m. on 9/1
➤ Mental health screening at 4:08:22 p.m. on 9/1
➤ Medical interaction where patient reports recent/significant opiate use at 4:34:11 p.m. on 9/1
➤ Vitals/medical interaction at 10:41:27 p.m. on 9/1
➤ Vitals/medical interaction at 10:50:47 p.m. on 9/1
➤ Vitals/medical interaction, including COWS Assessment at 00:33:04 on 9/2
➤ Medical interaction and COWS Assessment refusal at 12:07 p.m. on 9/2
➤ Medical interaction, Columbia Suicide Screening Form, and COWS Assessment at 6:21:44 p.m. on 9/2

Judge Dancks
January 31, 2024
Page 8

The missing footage would also capture any interactions Peng would have had with the County guards or anyone else at the jail, prior to a medical emergency where she was found with contraband.

During meet and confers, the County refused to confirm that it had preserved all footage of Peng's incarceration. The County also refused to describe the steps it took to preserve the footage in this case. Instead, for the first time in its status report, the County now reveals new details about its efforts to collect video footage ***and that it did not, in fact, preserve all footage of Peng's incarceration***. Given the acute relevance of Peng's interactions with other persons during her brief three-day incarceration—especially considering the County's crossclaims against NaphCare—the parties are highly prejudiced from the County's failure to preserve the footage. That's textbook spoliation for which courts have imposed serious sanctions.

The County now claims that "County Defendants have confirmed[*sic*] the Justice Center footage of these other periods neither concerned nor contained decedent Angela Peng and therefore were not subject to a litigation hold. County Defendants have therefore disclosed all the Justice Center footage in their possession." Dkt. 117 at 5. There are several problems with that response. ***First,*** it's unclear how the County can confirm that Peng was not in the missing footage if they didn't preserve the missing footage. ***Second,*** it's implausible that Peng did not appear on camera for nearly two days during her three-day incarceration. ***Third,*** the medical records bely the County's claim.

The County should confirm that it has failed to preserve all footage of Peng's incarceration in response to discovery requests and describe the steps it took to preserve the footage.

### e. The County should confirm whether it has produced all responsive communications with the AG (RFP 15).

The County has also refused to confirm whether it withheld any documents in response to RFP 15. In **RFP 15**, NaphCare requested that the County "[p]roduce all Documents or Communications between You and the Office of the Attorney General of the State of New York related to NaphCare, Proactive, Angela Peng, Cheree Byrd, and/or Paul Watkins, including but not limited to any text messages, voicemails, email correspondence, and electronic meeting invitations." Cheree Byrd was an inmate whose baby died after she delivered birth at the Jail on August 1, 2022, and Paul Watkins was an inmate who committed suicide at the Jail in December 2021.

In its Second Amended Responses, the County raised boilerplate objections and pointed to only fourteen previously produced documents, none of which pertain to Byrd or Watkins. The County also did not appear to produce all documents attached or referenced to

Judge Dancks
January 31, 2024
Page 9

the documents, like attachments to emails buried in chains that the County produced. *See, e.g.,* Olson Decl. Ex. K (CNTY-000362):



Despite these apparent deficiencies, the Country stated that it has "already produced all responsive and discoverable materials" without reference to any documents it was withholding. The County should clarify which documents, if any, it withheld based on its objections—including attachments to the documents it produced.

### f.  The County should produce personnel files of County officers involved in Peng's care (RFP 20).

The County has also refused to produce personnel files of the County employees involved in Peng's care, including and specifically those who waited ten minutes to call medical and discovered Peng in her cell with a sheet tied around her neck. Olson Decl. Ex. D. Personnel files are relevant to determine any misconduct or relevant training in key witnesses, which are relevant to *Monell* and negligence claims. *See Vann v. City of Rochester*, No. 18-CV-6464-EAW-MJP, 2023 WL 4976002, at *2 (W.D.N.Y. Aug. 3, 2023) (noting that the court compelled the production of personnel files in a case with *Monell* claims). The County should produce them here. In another example of why the parties should have collaborated in filing a joint status report, the County neglected to mention this dispute at all in their status report.

Judge Dancks
January 31, 2024
Page 10

### g.  The County should provide a privilege log.

The County has yet to provide *any* log listing documents it withheld or redacted based on privilege when responding to NaphCare's document requests, in violation of the federal and local rules. "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). "[I]n order to evaluate and facilitate the determination of whether a privilege exists, courts generally require compliance with this statutory mandate that an adequately detailed privilege log be provided." *Trudeau v. New York State Consumer Prot. Bd.*, 237 F.R.D. 325, 334 (N.D.N.Y. 2006). "To constitute an acceptable privilege log, at a minimum, it should provide facts that would establish each element of the claimed privilege as to each document, and identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." *Trudeau*, 237 F.R.D. at 334 (cleaned up).[2]

The Local Rules further emphasizes that "[a] party claiming privilege with respect to a communication or other item must specifically identify the privilege and the grounds for the claimed privilege.  The parties may not make any generalized claims of privilege." Local Rule 37.1(g).

In violation of these rules—and despite objecting to several of NaphCare's RFPs on privilege grounds and redacting substantial portions of produced documents—the County has persistently refused to provide a privilege log to NaphCare. But its objections suggest that it withheld documents based on privilege. For example, in its initial response to RFP 15 requesting communications with the AG, the County objected in part by claiming that responsive documents may be covered by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). And in its response to RFP 19 requesting all video footage of Peng's incarceration, the County objected in part based on the attorney-client

---

[2] *See also Albany Coll. of Pharmacy & Health Sci. v. Acer, Inc.*, No. 1:09-CV-089, 2009 WL 10720998, at *3 (N.D.N.Y. Dec. 18, 2009) (requiring a party to submit a privilege log "containing the following information: (1) the identity of each person listed as author and their role in preparing the documents; (2) the identity of each recipient, the role in which they received the documents and whether they are a party or non-party; (3) a more elaborate description of the specific documents, or specific portion of the document, which is claimed to be protected by any privilege, without revealing the substance of the privileged communication; (4) identify any bate stamp number or any other identifiable notation; and (5) identify the type of privilege being asserted.").

Judge Dancks
January 31, 2024
Page 11

privilege. It also initially failed to specify *any* of the numerous redactions it made throughout its productions, such as these redactions:



Olson Decl. Ex. L and M. Indeed, the only document it served referencing any withholding whatsoever was to the *Plaintiff* regarding their responses to the *Plaintiff's* RFPs, not any other party. Olson Decl. Ex. N (County 08/29 Privilege Letter). In its status report, the County neglected to mention that its August 29 letter was directed to Plaintiff and concerned the County's production in response to the Plaintiff's document demands.

In response to NaphCare's requests, the County eventually produced a "redaction" log that listed its redactions largely based on "unrelated inmate information." Olson Decl. Ex. O (County's letter and redaction log). Given the County's mistakenly narrow view of relevancy (as demonstrated by its other responses), it's unclear how the County believes information contained within undisputedly responsive documents can be redacted on such grounds. In any event, courts have long held that the County's conduct is improper here: parties cannot redact information within responsive documents on relevancy grounds. *See Cyris Jewels v. Casner*, No. 12CV1895KAMSLT, 2016 WL 2962203, at *4 (E.D.N.Y. May 20, 2016) ("The City has cited no authority—and the court has found none—upholding a party's right to redact from admittedly responsive and relevant documents information based on that party's unilateral determinations of relevancy. Indeed, courts in this circuit have often rejected defendants' requests for redaction of irrelevant text within relevant documents." (collecting cases)).

Judge Dancks
January 31, 2024
Page 12

The lack of a privilege log whatsoever clearly violates the rules—especially when the County's own objections and productions suggest the need for one. In accordance with the federal and local rules, the County should serve a log with the requisite information for all documents withheld and remove all redactions based on relevancy.

In its status letter, the County also addresses their concerns with NaphCare's privilege log. It neglected to mention that it served a letter on January 26 detailing its issues, but the parties have not yet met and conferred over this issue. Without a meet and confer, the issue is not ripe for a court conference. NaphCare is willing to confer with the County on their concerns in the hopes of reaching an agreement.

### h.  The County should provide attachments and linked documents.

The County has also refused to produce documents clearly attached and linked to the documents it produced, instead promising only to review the attachments and produce the ones it deems responsive, if any, by February 10. This burden-shifting of basic discovery obligations is impermissible—it is the County's job to provide a complete production in the first instance. Moreover, courts have routinely held that documents attached to relevant and responsive documents should be produced. *See, e.g.*, *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, No. 08 CIV. 7508 SAS, 2011 WL 3734236, at *1 (S.D.N.Y. Aug. 24, 2011) (ordering the production of non-privileged attachments to emails); *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, No. 3:04CV2150(JBA)(WIG), 2006 WL 1272615, at *4 (D. Conn. Feb. 6, 2006) ("Attachments should have been produced with their corresponding e-mails. The Court appreciates the fact that the attachments were created with different software programs, but that does not provide Defendants with an excuse to produce the e-mails and attachments in a jumbled, disorganized fashion.").

Here, it does not appear that the County produced several key documents attached or linked to emails that are concededly responsive. These documents include, for example, documents exchanged between County employees immediately following Peng's release to the hospital, toxicology analyses, encrypted emails about toxicology, and other documents with Peng listed in the name. A few examples follow:

Judge Dancks
January 31, 2024
Page 13

Olson Decl. Ex. P (CNTY-000214).



Olson Decl. Ex. Q (CNTY-000021).



Olson Decl. Ex. R (CNTY-000064).

Judge Dancks
January 31, 2024
Page 14

| From: | Andrew Evans |
|---|---|
| To: | Mai Tran |
| Subject: | Fw: Deceased Defendants Report |
| Date: | Friday, October 1, 2021 7:41:33 AM |
| Attachments: | Deceased_Defendants_Report-20211001Q206.pdf |

Andrew Evans
Data Entry Supervisor
Onondaga County Sheriff's Office
Records Unit
407 South State Street
Syracuse, NY 13202
Phone: 315-435-3010

Olson Decl. Ex. S (CNTY-000055).

| From: | Jeffrey Wick |
|---|---|
| To: | John D'Eredita |
| Cc: | Timothy Quinn |
| Subject: | Peng, Angela |
| Date: | Saturday, September 4, 2021 1:55:09 PM |
| Attachments: | Peng Court.pdf |
| | Peng Folder.pdf |

Gentleman,

As requested,

Sergeant Jeffrey Wick
B Watch Booking Supervisor
Onondaga County Sheriff's Office
(315) 435-1783

Olson Decl. Ex. T (CNTY-000325). From these emails, it appears that the County did not produce certain attachments, documents linked within the emails it produced, or encrypted or secured emails referenced within the produced emails.

When notified of its repeated failure to produce attachments or documents embedded in the emails, the County simply promised to review and determine whether it would produce such attachments, without agreeing or recognizing its basic obligation to produce complete families of documents. The County has since promised to confirm which attachments, if any, it will produce on February 10, after months of delay. The County should produce documents attached to and linked in documents it previously produced.

**2. The County should confirm the availability of County witnesses.**

The County has also refused to confirm availability for the depositions of County deputies and its representative. NaphCare noted the depositions of Deputies Cailee Campbell, James Cabrey, Justin Leubner, and a County representative. Instead of confirming these witnesses' availability, the County said it wants to resolve the discovery

Judge Dancks
January 31, 2024
Page 15

disputes first. The discovery disputes, however, are largely a creation of the County's own making, which the County cannot convert into a justification for avoiding depositions. Moreover, it is *NaphCare*'s right to extend the depositions it noted if it chooses. The County should provide dates for the depositions NaphCare has noted.

**3. Dr. Alvarez is an apex witness.**

The deposition of Dr. Alvarez, NaphCare's Chief Medical Officer, should also be struck. He is considered an "apex" witness and the County has failed to demonstrate the need to depose him in this case.

Before a party can take the deposition of a high-ranking or "apex" corporate officer, it must demonstrate that the officer possesses superior or unique information relevant to the issues being litigated *and* that the information cannot be obtained by a less intrusive method, such as by deposing lower-ranking employees. *See, e.g. Frasers Group PLC v. Gorman*, 23 Misc. 348 (PAE), 2023 WL 6938284 (S.D.N.Y. Oct. 19, 2023) (denying application for judicial assistance to depose CEO) (citing *In re Ski Train Fire of Nov. 11, 2000 Kaprun, Austria*, No. MDL 1428 (SAS) THK, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006) (denying motion to compel depositions of senior executives because "Courts disfavor requiring the depositions of senior executives unless they have personal knowledge of relevant facts or some unique knowledge that is relevant to the action.")).

Here, Dr. Alvarez was not involved in Ms. Peng's medical care and does not have any direct knowledge or unique information relevant to the issues being litigated. His only connection to this case is that he assessed primary source records when he responded—in his corporate executive capacity and on behalf of NaphCare—to a New York State Commission of Correction letter directed to him.

To be clear, any such communications between Dr. Alvarez and the Commission were made on behalf of NaphCare, not Dr. Alvarez in his individual capacity. A Rule 30(b)(6) deposition—which the County has also noted—is the more appropriate vehicle to get this information, as Dr. Alvarez does not himself have any percipient information, much less superior or unique information about this analysis. He and other members of NaphCare's corporate team relied on information, records, and first-hand accounts of lower-ranking employees who were directly involved in Ms. Peng's care and/or Proactive's contract with the County. His deposition should be struck. In attempts to reach an agreement during meet and confers, NaphCare suggested that the parties proceed with depositions of lower-level witnesses and then revisit the need for Dr. Alvarez's deposition. The County refused.

Judge Dancks
January 31, 2024
Page 16

### III.   CONCLUSION

For the reasons listed above, NaphCare respectfully requests a conference and the Court's guidance on: 1) procuring the County's full and complete responses to the discovery requests outlined above, and available dates for their witnesses; 2) obtaining a fulsome explanation of what appears to be significant and case-dispositive spoliation by the County of critical video evidence that should have been preserved; and 3) addressing the deposition of an apex NaphCare witness.

Thank you,

Stephanie D. Olson

SDO:djs